2002 SD 118

**In the Matter of the ESTATE OF Henry SIEBRASSE, Deceased.**

**No. 21968.**

Supreme Court of South Dakota.

Order Granting Rehearing
March 22, 2002.

Argued on Rehearing May 28, 2002.

Decided Sept. 25, 2002.

Gregory Erlandson, John Raforth, Joseph M. Butler of Bangs, McCullen, Butler, Foye and Simmons, Rapid City, SD, for petitioner and appellant on Rehearing Estate and Personal Representative, Donald Siebrasse.

Kennith L. Gosch, Rory King of Bantz, Gosch, Cremer, Peterson & Sommers, Aberdeen, SD, for appellee on Rehearing, Delbert Siebrasse.

## REHEARING OF DECISION OF SOUTH DAKOTA SUPREME COURT

GORS, Acting Justice.

[¶ 1.] This case comes to us on our grant of the Estate's petition for rehearing in Estate of Siebrasse, 2002 SD 26, 640 N.W.2d 747 (*Siebrasse I*). In *Siebrasse I*, we were unanimously persuaded that the general direction in the testator's will to pay all "just debts," coupled with the specific gifts of specific land to named devisees, inferred that the testator intended to shift the burden of federal estate taxes to the residuary estate in lieu of equitable apportionment under the rule found in SDCL 29A–3–916. Now, after reviewing cases from other states, the Uniform Probate Code's (UPC) treatment of federal estate taxes and policy considerations, we reverse that part of our earlier ruling in *Siebrasse I* relating to apportionment of federal estate taxes.

### FACTS AND PROCEDURE

[¶ 2.] The facts of this case are detailed in *Siebrasse I*, 2002 SD 26 at ¶¶ 2–7, 640 N.W.2d at 748–49. This is a probate dispute between two brothers. Henry Siebrasse (Henry) died May 1, 1999. He was survived by two sons, Donald and Delbert, and one daughter, Leola Siebrasse Hall (Leola). After a formal petition was filed, Henry's will was admitted to probate.

Donald was appointed personal representative pursuant to Henry's will.

[¶ 3.] Article I of the deceased's will directed his "executor ... to pay all my just debts and funeral expenses as soon after my decease as conveniently may be." Article II provided, in part, "[a]fter payment of such funeral expenses and debts, I give, devise, and bequeath all of my property...." The will then set forth specific bequests of Henry's real estate. Article III was the residuary clause, dividing the remainder of his property between two of his three children: Donald and Leola.

[¶ 4.] Henry left a total estate of $2,193,569.00 ($2,074,313.00 after expenses). The federal estate taxes were $500,962.00 or nearly 25% of the total estate. At the request of the Estate, the trial court held a hearing in November of 1999, regarding the apportionment of the federal estate taxes. Delbert was present, but he was not represented by counsel. Delbert objected but the trial court concluded that Delbert did not really object because he said, "I don't object to paying my tax...." The trial court equitably apportioned the federal estate taxes under SDCL 29A–3–916 which provides:

[U]nless the will otherwise provides, the tax shall be apportioned among all persons interested in the estate. The apportionment is to be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax are to be used for that purpose. If the decedent's will directs a method of apportionment of tax different from the method described in this code, the method described in the will controls.

Donald Siebrasse's apportioned share of the federal estate taxes was $197,801.00.

Delbert Siebrasse's apportioned share was $92,710.00. Each specific, general and residual devise under the will and each nonprobate transfer[1] paid the same 24.15% share of the federal estate taxes.

[¶ 5.] In *Siebrasse I*, we disagreed with the trial court's equitable apportionment of the federal estate taxes. 2002 SD 26 at ¶ 18, 640 N.W.2d at 751. Pursuant to SDCL 29A–3–916(b), we held that Henry's will *"provide[d] otherwise"* because Article I provided that "just debts" were to be paid first. Citing *Matter of Estate of King*, 278 N.W.2d 171, 174 (S.D.1979), we held that a direction to pay debts *first* shifted the burden of federal estate taxes to the residual estate.

[¶ 6.] The only issue on rehearing is whether SDCL 29A–3–916(b) requires apportionment of the federal estate taxes equally over all bequests in this estate or whether the residual estate should be subjected to federal estate taxes before apportioning the taxes among the specific devises.

## ANALYSIS AND DECISION

[¶ 7.] The Estate argues that our decision in *Siebrasse I* ignores the equitable apportionment rule in SDCL 29A–3–916(b), and thus significantly changes federal estate tax apportionment law in South Dakota. Estate contends that our decision represents a dramatic departure from existing law and, if left unchanged, will have an unanticipated and unintentional adverse impact upon the estates of other decedents.          .

## THE INFERENTIAL APPROACH

[¶ 8.] The purpose of a specific bequest is to give specific property to a specific person because the testator wants that person to have that property. The testator wants the devisee to have the specific thing, not something else and not something less. Therefore, specific bequests are the last to be abated to satisfy debts. SDCL 29A–3–902.

[¶ 9.] Henry Siebrasse wanted Donald, Delbert and Leola to have the specific land he bequeathed them. He described each parcel in the will. He did not give Donald 1120 acres and Delbert and Leola each 800 acres. He did not give Donald an undivided 40% in all the land and Delbert and Leola each an undivided 30%. Instead, Henry gave Donald the following 1120 acres:

SW-¼ and SE-¼, Section 29;

NE-¼ and NW-¼, Section 32;

N-½ of the S-½, Section 32;

NE-¼ and NW-¼, Section 30;

he gave Leola the following 800 acres:

All of Section 31;

SW-¼, Section 30;

and he gave Delbert the following 800 acres:

NW-¼, Section 3, Township 117, Range 78;

All of Section 36, Township 117, Range 79.

Henry wanted certain land to go to certain people. No two pieces of land are alike. Individual parcels of real property are considered to be so unique that when an action is brought for breach of a contract for the sale of land, specific performance may be ordered. SDCL 21–9–1 and 21–9–9; *Renner v. Crisman*, 80 S.D. 532, 127 N.W.2d 717 (1964).

[¶ 10.] Henry also directed his executor to pay just debts and funeral expenses

---

1. Bank accounts held in joint tenancy and life insurance were transferred outside of the probate.

first. This was a clear statement of his intention that just debts and funeral expenses come out of the residuary estate to preserve the specific bequests for the people for whom they are intended. *King,* 278 N.W.2d at 174. Otherwise, the named devisees would get considerably less than the specific property devised.

[¶ 11.] The common laws provided that estate taxes were to be paid from the residuary. 85 CJS *Taxation* § 1889 at 875. South Dakota first abrogated the common law and adopted equitable apportionment in 1961. SDCL ch. 29-7 (repealed by 1995 SD Sess. L. ch. 167 § 96). In 1995, South Dakota adopted the Uniform Probate Code, including SDCL 29A-3-916(b), which continues to provide for equitable apportionment of federal estate taxes so that each specific share, interest or legacy bears its proportionate part of the federal estate taxes.

[¶ 12.] The issue is whether 29A-3-916(b) requires apportionment of federal estate taxes equally over all bequests in this case. SDCL 29A-3-916(b) includes an exception to the general rule of proportional apportionment if a "will otherwise provides." According to *Matter of Estate of King,* 278 N.W.2d at 174, a direction to pay "debts and taxes" first shifted the burden of federal estate taxes to the residual estate. However, unlike the will in *King,* Henry's will did not mention taxes, it only directed payment of "just debts."

[¶ 13.] If federal estate taxes are equitably apportioned and deducted from Delbert's share, Delbert receives only three-fourths of the specific bequest. Delbert's land was valued at $328,600.00 and his apportioned share of federal estate taxes was $79,359.00 on the land. Therefore, Delbert only receives $249,241.00 worth of land after taxes or 75% of the specific devise.

[¶ 14.] We inferred from Article II of the will that Henry intended to give Delbert the entire specific parcels of land, not three-fourths of them. Otherwise Delbert would receive the equivalent of only 600 of the 800 acres which Henry specifically devised to him. The specific direction to give described parcels of land to named devisees, when read in conjunction with the shifting clause in Article I of the will, inferred that the will provided otherwise than for equitable apportionment. Equitable apportionment would defeat Henry's desire that the specific devisees receive the undiminished specific parcels of land.

[¶ 15.] However, after careful consideration, we now conclude that the uncertainty of the inferential approach will foster confusion and litigation over apportionment of federal estate taxes in numerous estates. Instead, we overrule *Siebrasse I* and adopt a bright line approach that equitable apportionment under 29A-3-916 applies unless a "tax clause" clearly shifts the burden of federal estate taxes from equitable apportionment and clearly identifies the property to which the burden is shifted.

**THE CLEAR INTENT APPROACH**

[¶ 16.] SDCL 29A-3-916(b) requires equitable apportionment of federal estate taxes among all bequests unless the will provides otherwise. The terms of the will must be "specific, clear, and not susceptible of reasonable contrary interpretation" to override equitable apportionment. *In re Estate of Kapala,* 402 N.W.2d 150, 153 (Minn.App.1987) (citing *In re Estate of Huffaker,* 641 P.2d 120, 121 (Utah 1982)); *see also In re Kelly's Estate,* 41 Colo.App. 316, 584 P.2d 640, 641 (1978); *Wendland v. Washburn Univ.,* 8 Kan.App.2d 778, 667 P.2d 915, 917 (1983); *In re Hilliar's Estate,* 498 P.2d 1237, 1239 (Wyo.1972).

[¶ 17.] There is no specific formula or words to be used to shift the federal estate tax burden from equitable apportionment to some other method. 85 C.J.S. *Taxation* § 1893 at 880. The will must be construed as a whole. *Id. See also Briggs v. Briggs,* 73 S.D. 500, 506, 45 N.W.2d 62, 65 (1950) (stating that "[t]he sole purpose of the process of construction is to discover the intention of the testator. If that intention is clearly revealed by the language of the will, when read in its entirety in the light of the circumstances of its formulation, it will be declared.").

[¶ 18.] The language of the will controls. In *Estate of Tovrea v. Nolan,* 173 Ariz. 568, 845 P.2d 494, 500 (Ariz.App. Div. 1 1992). A few simple words may suffice if they sufficiently indicate an intent against apportionment. *In re Ogburn's Estate,* 406 P.2d 655, 657–58 (Wyo. 1965). Any ambiguity is to be resolved in favor of equitable apportionment. *Estate of Carley,* 90 Cal.App.3d 582, 153 Cal.Rptr. 528, 531 (1979); *In re Pergament's Estate,* 29 Misc.2d 334, 218 N.Y.S.2d 831, 834 (N.Y.Sur.1961), *aff'd,* 19 A.D.2d 945, 245 N.Y.S.2d 312 (N.Y.A.D.1963).

[¶ 19.] Therefore, we conclude that the language of the will must be clear to override equitable apportionment.

## TAX CLAUSE

[¶ 20.] Henry's will directed the personal representative "to pay all my just debts and funeral expenses as soon after my decease as conveniently may be." The Estate argues that federal estate taxes are not "just debts" of the testator; therefore, the clause in Henry's will directing payment of just debts does not cast the burden of federal estate taxes on to the resid-

ual estate. The Estate maintains that to be clear enough to override equitable apportionment under SDCL 29A–3–916(b), Henry's will must contain a "tax clause" in addition to a direction to pay "just debts."

*Federal estate taxes are a debt of the estate but not a debt of the testator*

[¶ 21.] As we noted in *Siebrasse I,* SDCL 55–13–5 charges the principal of an estate with all settlement expenses, including federal estate taxes.[2] Further, an estate cannot be closed until the federal estate taxes are paid. *See* SDCL 29A–3–1003(a)(2). These statutes make it clear that federal estate taxes are debts of the estate. They do not, however, answer whether federal estate taxes are "just debts" of the testator.

[¶ 22.] There are two kinds of "death taxes." A tax on the right to transmit property is generally referred to as an estate tax and a tax on the right to receive property from a decedent is generally referred to as an inheritance tax. 85 C.J.S. *Taxation* § 1783 at 794. Federal estate taxes are a tax on the right to transfer property from the estate of the decedent to the beneficiaries. *Id;* 26 U.S.C. § 2001(a). The federal estate taxes are imposed on the gross estate minus expenses of administration, credit for state inheritance taxes and the unified credit.

[¶ 23.] By contrast, South Dakota's inheritance tax, in effect at the time of Henry's death and since repealed, is a tax on the right to receive property from an estate. Each beneficiary pays tax on what each beneficiary receives and has personal exemptions and special rates, depending on the relationship to the deceased. Therefore, state inheritance taxes are not

---

2. However, SDCL 55–13–5 does not provide an alternative to equitable apportionment; it merely requires the taxes to be paid from the principal of the estate without directing any preferential order.

"just debts" of Henry or Henry's estate and are not at issue here.

[¶ 24.] Federal estate taxes are a tax on the testator's accumulation of wealth. During a lifetime, a person may accumulate property and make investments. Property and investments sometimes appreciate in value and become a capital gain. A person may also turn ordinary income into capital gain by depreciating equipment and improvements to capital assets and by deducting expenses that enhance accumulated assets [3] from ordinary income. The increase in value is ultimately taxed as capital gain on liquidation before death or as part of the testator's estate after death. Therefore, federal estate taxes are a legitimate debt on the testator's accumulation and increase in wealth.

[¶ 25.] However, federal estate taxes do not come into existence until the testator dies. 26 U.S.C. § 2001(a).[4] *See* SDCL 10–41–61. Therefore, while federal estate taxes are a debt of the estate, they are not a debt of the testator.

*Other jurisdictions*

[¶ 26.] Other jurisdictions agree that federal estate taxes are not debts of the testator. In *Reed v. United States*, 316 F.Supp. 1228, 1230 (E.D.Mo.1970), a federal district court held that a direction in a will that "just debts" be paid out of the residual estate did not include the payment of federal estate taxes, which are not a "debt" of the testator under Missouri law. In *Young v. Dunton*, 106 N.H. 249, 209 A.2d 719, 720 (1965), the court held that federal estate taxes were not a debt of the testator. *See also In re Packard's Estate*, 174 Ohio St. 349, 189 N.E.2d 434, 435

(1963); *F & M Bank v. Robinson*, 1994 WL 1031004, at *3 (Va. Cir. Ct.1994); *Molner v. Silbert*, 8 Ill.App.2d 388, 132 N.E.2d 36, 38 (1 Dist.1956).

*Uniform Probate Code*

[¶ 27.] Henry died in 1999. The UPC was adopted in 1995 and provides that it applies to the estate of all decedents dying after July 1, 1995, SDCL 29A–8–101(b)(1), and to instruments executed by decedents dying after July 1, 1995, without regard to when the instrument was executed. SDCL 29A–8–101(b)(2). Therefore, the UPC governs Henry's will even though the will was executed on June 2, 1986.

[¶ 28.] The UPC treatment of federal estate taxes bolsters the conclusion that federal estate taxes are not debts of the testator. SDCL 29A–3–916(a)(5) defines taxes as federal estate taxes and state inheritance taxes. Nowhere in the UPC are federal estate taxes defined as debts of the testator. Moreover, SDCL 29A–3–805 refers to "[d]ebts and taxes" separately. Therefore, the UPC considers each to be a separate category. Finally, SDCL 29A–1–201(7) defines creditor's "claims" and federal estate taxes are specifically excluded.

*Policy Considerations*

[¶ 29.] Even though we might infer that Henry Siebrasse wanted Delbert to receive his land tax free, it is not clear from the will what other assets were to be used to pay the taxes or in what order. The residuary estate is not large enough to pay all of Henry's "just debts" and the federal estate taxes. Although 29A–3–902 provides the order of abatement of bequests, it is not clear from the will where

**3.** As an example, for a farmer such as Henry, ordinary expense hay is fed to capital asset cows resulting in capital gain depending on how the cow was acquired and how it was treated for tax purposes.

**4.** "A tax is hereby imposed on the transfer of the taxable estate of every *decedent* who is a citizen or resident of the United States." (emphasis added).

the tax burden should fall next: on non-probate assets, property held in joint tenancy, insurance, general bequests or specific assets.

[¶ 30.]  By contrast, if the will had said "I give Delbert Siebrasse the following:
  NW-¼, Section 3, Township 117, Range 78;
  All of Section 36, Township 117, Range 79[;]
free from federal estate taxes which are to be paid from the residuary estate," then the intent of the testator would be clear. If the intent is not clear, equitable apportionment should apply.

## CONCLUSION

[¶ 31.]  Therefore, we conclude that federal estate taxes are not debts of the testator.  Since federal estate taxes are not debts of the testator, a "tax clause" is necessary to show the clear intent required to defeat equitable apportionment. The tax clause should shift the burden of federal estate taxes from equitable apportionment and identify the property to which the burden is shifted.  That portion of *Siebrasse I* which reversed the trial court and held that federal estate taxes should be paid from the residuary estate is overruled and the order of the trial court equitably apportioning federal estate taxes is affirmed.

[¶ 32.]  GILBERTSON, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.

[¶ 33.]  ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.