2002 SD 142

**In re ESTATE OF Walter L. BROWNLEE, Sr.**

**Nos. 22288, 22289.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 7, 2002.

Decided Nov. 20, 2002.

Rehearing Denied Dec. 13, 2002.

Thomas J. Linngren of Green, Schulz, Roby, Oviatt, Cummings & Linngren, Watertown, South Dakota, Attorneys for appellee, F & M Bank.

J. Douglas Austin of Austin, Hinderaker, Hopper, Strait & Bratland, Watertown, South Dakota, Attorneys for appellee, Randy Brownlee.

Todd D. Boyd, Gregory J. Stoltenburg of Gunderson, Evenson, Boyd, Knight & Stoltenburg, Clear Lake, South Dakota, Attorneys for appellant, Jeanie Weekley.

SABERS, Justice.

[¶ 1.] Jeanie Weekley appeals the trial court's determination of 1) apportionment of federal estate and state inheritance tax liability and 2) the order of abatement to satisfy the obligations of the estate.

[¶ 2.] By notice of review, Randy Brownlee (Randy) appeals the trial court's determination 3) that the testator attempted to gift certain business equipment to Randy but that the gift was ineffective due to failure of delivery, and 4) refusal to reopen the hearing for additional evidence.

[¶ 3.] We affirm Issues 3 and 4, and modify Issue 1. Because of our holding on Issue 1, we need not decide Issue 2.

## FACTS

[¶ 4.] Walter L. Brownlee (Walter) died testate on August 17, 1997. Walter executed his Last Will and Testament and a Revocable Trust Agreement on March 10, 1997. Three provisions of those documents are important:

Article I of the Will provides:

I direct that all federal estate taxes chargeable to my taxable estate, including any taxes arising from the transfer or receipt of assets which are not part of my probate estate, shall be paid from the balance of my estate remaining after complying with the hereinafter sections of my Will. Any South Dakota inheritance tax that is charged against a beneficiary shall be the obligation and responsibility of the individual as to the assets they are to receive.

Article III of the Will provides:

[d]uring my lifetime I have established a Trust for the benefit of individual parties and they are to receive those assets as set forth in the said Trust.

Walter's Trust provides in part:

I direct that all inheritance tax, estate and other similar taxes of the United States, or any state thereof, assessed against my taxable estate or recipients thereof, whether passing by this Trust or otherwise, shall be charged to the principal of my Trust without reimbursement or contribution from any person.

[¶ 5.] The conflict between the provisions of the Will and Trust concerning the payment of estate and inheritance taxes are the heart of this dispute. The trial court found that the Will and Trust provisions were unambiguous and irreconcilable. He also determined that the Will provision controlled the apportionment of federal estate and state inheritance taxes.

[¶ 6.] The parties were unable to come to an agreement as to the order of abatement. According to South Dakota's abatement statute, SDCL 29A–3–902, the trial

court held that abatement would proceed in the following order:

1) intestate property;

2) property held in the residuary of the estate;

3) property that was not specifically devised;

4) property specifically devised;

5) the Trust, joint tenancy accounts and individual retirement accounts; and

6) multiple party bank accounts.

[¶ 7.] Randy is Walter's son. He began working for Walter's gravel crushing business in 1971. Walter retired in 1989 and Randy continued the business. Apparently, they had an agreement whereby Randy retained possession of the business equipment and paid Walter "whatever he wants each year, plus whenever he wanted a car ... it all depended on how good a year we had." There was no written agreement. Walter structured the transaction as a lease to avoid the tax consequences of an outright sale of the equipment. However, Randy argues on appeal that Walter's actual intent was that the transaction was a sale.

[¶ 8.] Three days before drafting his Will and Trust, Walter executed a Bill of Sale to Randy which described certain construction equipment. Walter left the Bill of Sale with his attorney for delivery to Randy after Walter died. Three of the items described in the Bill of Sale were certificates of title to vehicles which had already been transferred into Randy's name. These three items were labeled exhibits A, B and C. The trial court held that they were effectively transferred to Randy, but that the remaining items in the Bill of Sale were an attempt to gift the property to Randy which failed due to lack of delivery.

[¶ 9.] Richard Bohls, the CPA for Walter and Randy, testified on behalf of Ran-

dy at the hearing. After Bohls was dismissed as a witness, counsel for Weekley cross-examined Randy on whether he had any gift tax returns to support his contention that some of the property had already been gifted to him. Randy's counsel asked for a continuance so that Bohls could be recalled to testify as to three gift tax returns. However, these gift tax returns did not include property involved in this estate, but referred to other property which had previously been gifted to Randy and his family. The court refused to continue the proceeding but stated that if Bohls could be in court before the close of the proceeding, it would consider taking him out of order. Counsel for Weekley rested, the hearing was concluded and Bohls was not re-called. The next morning Randy found the gift tax returns although he had previously stated were unobtainable because they were "iced in." Randy's counsel filed a motion to reopen the hearing. The trial court entered findings of fact and conclusions of law denying the motion.

[¶ 10.] Weekley appeals two issues:

1. Whether the trial court erred in determining that the Will and Trust provisions regarding apportionment of taxes could not be reconciled and that the Will controls apportionment.

2. Whether the trial court erred in interpreting South Dakota's abatement statute, SDCL 29A–3–902.

[¶ 11.] By notice of review, Randy appeals two issues:

3. Whether the trial court erred in determining that the Bill of Sale was an ineffective gift and that the construction equipment remained in the residuary estate.

4. Whether the trial court abused its discretion in denying Randy's motion to reopen the hearing to allow

him to present evidence of previous gifts from Walter to Randy and others.

[¶ 12.] We affirm the trial court on Issues 3 and 4, modify Issue 1, and need not decide Issue 2.

## STANDARD OF REVIEW

■ [¶ 13.] A trial court's interpretation of a will is reviewed de novo. *In re Estate of Klauzer*, 2000 SD 7, ¶ 10, 604 N.W.2d 474, 477 (quoting *Johnson v. Johnson*, 291 N.W.2d 776, 778–779 (S.D.1980)) (citation omitted). Likewise, we review the trial court's reading of a statute de novo. *Zoss v. Schaefers*, 1999 SD 105, ¶ 6, 598 N.W.2d 550, 552 (quoting *Satellite Cable Srvs. v. Northern Electric*, 1998 SD 67, ¶ 5, 581 N.W.2d 478, 480).

[¶ 14.] We review a trial court's findings of fact under the clearly erroneous standard and will not overturn conclusions of law unless the trial court erred as a matter of law. The question is "whether on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *Estate of Fountain v. Schroeder*, 2001 SD 139 ¶ 6, 637 N.W.2d 27, 28 (quoting *Century 21 Associated Realty v. Hoffman*, 503 N.W.2d 861, 864 (S.D. 1993)).

[¶ 15.] **1. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT THE WILL AND TRUST PROVISIONS REGARDING APPORTIONMENT OF TAXES COULD NOT BE RECONCILED AND THAT THE WILL CONTROLS APPORTIONMENT.**

■ [¶ 16.] When interpreting a will, our primary goal is to determine the testator's intent. *Klauzer*, 2000 SD 7 at ¶ 9, 604 N.W.2d at 477. All of the words and provisions of a will must be given effect so far as possible. *Klauzer*, 2000 SD 7, at

¶ 10, 604 N.W.2d at 477. If doubt exists as to the testator's intent, "the language used and the circumstances surrounding the execution of the writing will again be examined in light of pertinent rules of construction." *Klauzer*, 2000 SD 7 at ¶ 9, 604 N.W.2d at 477 (quoting *In re Estate of Nelson*, 250 N.W.2d 286, 288 (S.D.1977)).

■ [¶ 17.] "In determining whether testamentary language is ambiguous, we have stated: 'Language is ambiguous when it is reasonably capable of being understood in more than one sense.'" *Klauzer*, 2000 SD 7 at ¶ 10, 604 N.W.2d at 477 (quoting *In re Estate of Jetter*, 1997 SD 125, ¶ 20, 570 N.W.2d 26, 30–31) (citations omitted). The fact that parties disagree as to the interpretation of a will does not in itself make the document ambiguous. *Jetter*, 1997 SD 125 at ¶ 20, 570 N.W.2d at 31 (citation omitted).

■ [¶ 18.] The South Dakota probate code provides specific instruction for the apportionment of estate taxes. SDCL 29A-3–916. However, if the testator's will provides a different method of apportionment, the will controls. SDCL 29A-3–916 (b). It is clear that Walter's Will attempted to provide an alternative method of tax apportionment. Specifically, the Will provides that all of the taxes assessable against the estate are to be paid "from the balance of my estate remaining after complying with the hereinafter sections of my Will." The dispute arises because the Trust provides, "all inheritance tax, estate and other similar taxes of the United States, or any state thereof, assessed against my taxable estate or recipients thereof, whether passing by this Trust or otherwise, shall be charged to the principal of my Trust."

[¶ 19.] Weekley asserts that the provisions of the Will and Trust can be reconciled. She contends that the language "hereinafter sections of the Will" should

lead the court to Article III of the Will which indicates that the Trust was also executed. Her argument is that Article III of the Will incorporates the Trust. Therefore, in her view, the clause "after complying with the hereinafter sections of my Will" embraces not only the terms of the Will but also those of the Trust. Under her interpretation, in order to comply with the "hereinafter sections of the Will," the estate must fulfill all provisions, including the tax provision in the Trust, before apportioning taxes as instructed by the Will. The result would be that the Trust would be primarily responsible for all taxes.

[¶ 20.] SDCL 29A–2–510 provides,

[a] writing in existence when a will is executed may be incorporated by reference if the language of the will manifests this intent and describes the writing sufficiently to permit its identification.

There is nothing in the language of Article III of the Will to indicate an intent that the Trust be incorporated into the Will. Furthermore, by construing the article to effectively incorporate the Trust, the second sentence of Article I of the Will, which places the burden of paying inheritance taxes on the person receiving the property, is rendered ineffective. Weekley argues that the second sentence was intended to apply only if there was not enough in the Trust to pay for the inheritance taxes. This strains a plain reading of both documents. Had Walter intended that the Trust be ultimately responsible for all taxes, he could have easily stated as much, but he did not, instead, he made specific provision for the payment of inheritance taxes. There is no indication in either the Will or Trust that Walter wished any particular class of beneficiaries to bear the brunt of all of the estate and inheritance taxes, but under Weekley's reading, payment of all the taxes would exhaust the Trust principal, leaving some beneficiaries with nothing.

[¶ 21.] Weekley's assertion that the Court should look to the Trust as extrinsic evidence of Walter's intent is equally unpersuasive. The Trust language contradicts the language in the Will and therefore cannot be considered as extrinsic evidence to prove Walter's intent. As Weekley points out, extrinsic evidence is admissible to "identify the persons and property referred to in the will and to enable the Court to apply the words of the will to the matter to which it relates." 80 AmJur2d Wills § 1115 (2002). However, we will not consider extrinsic evidence for the purpose of contradicting the unambiguous language of a will.

[¶ 22.] Weekley's remaining argument in support of her position that the Trust is primarily responsible for all taxes focuses on the Will clause, "shall be paid from the balance of my *estate* ..." (emphasis provided). Under SDCL 29A–3–916(a)(1), "estate" is defined as "the gross estate of a decedent as determined for the purpose of federal estate tax and the estate tax payable to this state." The federal tax regulations indicate that the "gross estate," as determined for federal tax purposes, includes both probate and non-probate assets. According to Weekley, the term of art, "estate" must be given full effect, which would make the Trust principal, as a non-probate asset, primarily responsible for all assessable federal estate taxes. She contends that the trial court's interpretation of this clause to mean, "payment from the residue of the probate estate after completing the specific bequests made in the Will" ignores essential terms and adds surplus language to the Will.

[¶ 23.] We disagree with Weekley's interpretation of Article I of the Will. As the trial court noted, there is nothing in our law that requires the term "estate" to be

defined in the same manner as it is defined in the probate code. Additionally, as the Trustee points out, SDCL 29A–3–916 (a) begins by specifically limiting the application of its definitions to the "purposes of this section." Further, this reading of the Will renders an entire clause of Article I superfluous. The clause, "including any taxes arising from the transfer or receipt of assets which are not part of my probate estate," would be unnecessary if "estate" were intended to mean both probate and non-probate assets. Finally, looking to the Trust instrument, assigning Weekley's definition to the word "estate" does not make sense. Throughout the Trust, Walter refers to the property held in Trust as the "Trust estate." This denomination throughout the document makes clear his distinction between the property discussed in his Will ("estate") and the property maintained in Trust ("Trust estate").

[¶ 24.] We hold that the trial court correctly found the Will and Trust provisions, standing alone, are unambiguous and irreconcilable. The next inquiry is which document, if either, the Will or the Trust, controls apportionment of taxes. The trial court determined under SDCL 29A–3–916 that the terms of the Will controlled apportionment.

[¶ 25.] Under SDCL 29A–3–916, "[t]he terms of the will must be, 'specific, clear, and not susceptible of reasonable contrary interpretation' to override equitable apportionment." In re Estate of Siebrasse, 2002 SD 118, ¶ 16, 652 N.W.2d 384, 385 ("*Siebrasse II*") (quoting *In re Estate of Kapala*, 402 N.W.2d 150, 153 (Minn.App.1987)) (citations omitted). In *Siebrasse II*, we held that the language of the will must be

clear to override equitable apportionment.[1] We further noted that "any ambiguity is to be resolved in favor of equitable apportionment." *Siebrasse II*, 2002 SD 118 at ¶ 18, 652 N.W.2d at 388 (citations omitted). In the instant case, there are two thoroughly conflicting clauses within the testator's estate plan, the Will and the Trust. These provisions, read together, make the *issue* of federal tax apportionment ambiguous and therefore *Siebrasse II* controls. Lacking clear indication of the testator's intent, we hold that the federal estate taxes are to be equitably apportioned according to SDCL 29A–3–916.

[¶ 26.] In addition to the federal estate tax apportionment, Weekley appeals the trial court's determination of apportionment of South Dakota inheritance taxes. Weekley argues that the second sentence in Article I of the Will should be read to mean that inheritance taxes were to be charged against the Trust.[2] She argues that Walter's use of the word "beneficiary" in the sentence makes it clear that he was referring to those who would take under the Trust. To support this argument, she asserts that Walter used the word "beneficiary" only once in the Will but used it several times in the Trust. The result of this argument would be that the language in the second sentence of the Will would apply only in the event that there are insufficient funds in the Trust to satisfy all state inheritance taxes.

[¶ 27.] Weekley's argument is unpersuasive. Weekley argues that all of the taxes assessable against any takers under the estate plan would be assessed first against the principal of the Trust. It is

---

1. In fairness to the bench and the bar in this case, they did not have the benefit of *Siebrasse II* at the time of the arguments and decision below or the briefing on appeal.

2. The second sentence of Article I provides, "Any South Dakota inheritance tax that is charged against a beneficiary shall be the obligation and responsibility of the individual as to the assets they are to receive."

difficult to believe that the testator intended the Trust to take full responsibility for the beneficiaries under the Will when the only provision providing that individuals would be responsible for the inheritance tax appears in the Will. Weekley urges us to read the Will and Trust provisions together. Were we to do so, we would reach a contrary conclusion. Specifically, while the takers under the Trust could charge inheritance taxes to the principal, there was no such provision for the takers under the Will. We affirm the trial court on the issue of inheritance taxes and hold that each taker under the Will, or the Trust or otherwise, is responsible for state inheritance taxes on the property they receive.

**[¶ 28.] 2. WHETHER THE TRIAL COURT ERRED IN INTERPRETING SOUTH DAKOTA'S ABATEMENT STATUTE, SDCL 29A–3–902.**

[¶ 29.] Our holding in Issue 1 makes it unnecessary to decide the order of abatement. Neither the Estate nor the Trust will be responsible for federal estate or state inheritance taxes. In other words, there is no need for abatement because both the federal estate taxes and the South Dakota inheritance taxes will be paid by all recipients in proportion to the assets they receive. Given that none of the property will be taxed at higher than 100%, there will be no need to abate or refer to the estate for payment of taxes.

[¶ 30.] Walter's Will ordered his personal representative to "pay all my just debts and funeral expenses." This language exhibited a clear intent that the remaining debts and expenses are to be paid from the residuary of the estate. *Siebrasse II*, 2002 SD 118 at ¶ 10, 652 N.W.2d at 387 (citing *Matter of King's Estate*, 278 N.W.2d 171, 174 (S.D.1979)). Because of our holding on Issue 3, it appears the residuary of the Estate will be sufficient to

pay the costs of administration and the debts of the Estate and abatement will not be necessary.

**[¶ 31.] 3. WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT THE BILL OF SALE WAS AN INEFFECTIVE GIFT AND THAT THE CONSTRUCTION EQUIPMENT REMAINED IN THE RESIDUARY ESTATE.**

[¶ 32.] Randy argues that the trial court's decision on the disposition of the construction equipment should be reviewed de novo because he asserts the trial court erred in applying gift law to the facts, rather than applying the law of contracts. We disagree. The appropriate standard of review of the trial court's findings of fact is whether the trial court was clearly erroneous. *Estate of Fiksdal*, 388 N.W.2d 133, 135 (S.D.1986) (citing *Vaughn v. Eggleston*, 334 N.W.2d 870 (S.D.1983)). The trial court did not err in applying gift law to the facts. Looking to the record, although the arguments at the hearing are not entirely clear, counsel for Randy did argue that the elements of a gift were present. If there was a contract between Randy and his father, it was not effectively raised, supported or argued by counsel at the hearing.

[¶ 33.] Based on the evidence presented at the hearing, the trial court did not err in determining that the attempted transfer was an ineffective gift. Walter's tax returns treat the equipment as a rental to Randy, and Randy did nothing to establish any records to support the argument that he owned the property. Randy relies primarily on his own testimony to prove that most of the property in dispute was given to him. But the court noted, "[c]onsidering his memory, manner while testifying, his interest in the outcome, his inability to provide specifics, and the rea-

sonableness of his testimony in light of other evidence, the court finds he lacked credibility."

[¶ 34.] The court found that Walter signed a Bill of Sale, attached a list of equipment to it and left it with his attorney with instructions that it be passed to Randy after Walter's death. It is well settled that in order to effectively gift property to another, there must be proof that the donor intended the gift, that the donor delivered the gift to the donee and that there was an acceptance of the gift. *Fiksdal*, 388 N.W.2d at 135. Randy bore the burden of proving each of these elements by clear and convincing evidence. *Id.* The court properly found that by leaving the Bill of Sale with his attorney, Walter retained control over the property and therefore it was never effectively delivered to Randy. The property represented by the Bill of Sale, except for the property represented in Exhibits A, B, and C, was owned by Walter at the time of his death and became part of the probate estate.

[¶ 35.] **4. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO REOPEN THE HEARING TO ALLOW RANDY TO PRESENT EVIDENCE OF PREVIOUS GIFTS FROM WALTER TO RANDY AND OTHERS.**

[¶ 36.] Randy requested that the hearing be reopened so that he could present evidence of three of Walter's gift tax returns to support his argument that the construction equipment was his. The trial court denied the motion because Randy failed to show good cause for not having located the returns before the hearing.

[¶ 37.] Whether to reopen a proceeding after the parties have rested lies within the sound discretion of the trial court. *Endres v. Endres*, 532 N.W.2d 65, 72 (S.D.

1995). We will not disturb the trial court's decision unless there has been an abuse of discretion. *Hrachovec v. Kaarup*, 516 N.W.2d 309, 311 (S.D.1994).

[¶ 38.] Randy testified at the hearing that he was unable to obtain the gift tax returns because the garage where Bohls stored the returns was "iced in." However, the day after the hearing, counsel for Randy was able to procure the returns. Counsel for Randy indicated that he interviewed Bohls prior to the hearing and inquired into the location of the returns. Randy also testified that he told Bohls that he needed the returns prior to the hearing. However, when Bohls was subpoenaed for the hearing, there was no subpoena duces tecum requesting that he bring the returns along with him. Bohls died one week after the hearing. If the trial court had allowed the matter to be reopened, Bohls would not have been available to explain the returns or be cross-examined with regard to them. We also agree with the court that the returns were of "minimal relevance" as they did not include the property in dispute. Based on this record, we affirm the trial court's refusal to reopen the hearing.

[¶ 39.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶ 40.] AMUNDSON, Retired Justice, concurs.