2004 SD 46

**In the Matter of the ESTATE OF Henry SIEBRASSE, Deceased.**

**Nos. 22964, 22978.**

Supreme Court of South Dakota.

Considered on Briefs on Feb. 17, 2004.

Decided April 7, 2004.

Jeff G. Hurd, John H. Raforth of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, South Dakota, Attorneys for appellant, Estate & Donald Siebrasse.

Kennith L. Gosch, Melissa E. Neville of Bantz, Gosch, Cremer, Peterson & Sommers, Aberdeen, South Dakota, Attorneys for appellee, Delbert Siebrasse.

ZINTER, Justice.

[¶ 1.] This appeal involves an ongoing probate dispute. Delbert and Donald Siebrasse are devisees of their father's estate. As a result of Delbert's successful efforts to reduce the taxable value of his inheritance, the total value of the taxable estate was reduced. As a result of that reduction, the Estate received a federal estate tax refund. Over Estate's objection, the circuit court ordered that the entire refund be given to Delbert, rather than apportioning the new tax liability among all persons

in proportion to their respective interests.[1] In deciding this refund issue, the circuit court also valued Delbert's inherited land and denied Delbert's request for attorney's fees. Both brothers appeal, and we: (1) reverse the order requiring an immediate distribution of the entire tax refund to Delbert, (2) remand for an apportionment of the ultimate estate tax liability, (3) reverse the trial court's finding on the valuation of Delbert's land, (4) remand for a reconsideration of Delbert's attorney fee request, and (5) affirm all other issues.

### Facts and Procedural History

[¶ 2.] Henry Siebrasse died on May 1, 1999. Henry was survived by his daughter, Leola Siebrasse Hall, and two sons, Donald and Delbert. Henry's will was admitted to probate, and his son Donald was appointed personal representative. Donald, as personal representative, reported the value of Delbert's inherited land at $328,600 for tax purposes. However, Delbert argued that the value should be reduced by $183,600 to $145,000. The federal estate tax was calculated on the value of the total estate, which included the personal representative's $328,600 land value. The tax was apportioned among all those interested in the estate, and Delbert paid $92,710 as his pro rata share.

[¶ 3.] This land valuation disagreement became the subject of two previous appeals before this Court. In the first, we held that Delbert was denied due process when he was denied a hearing on valuation. *In re Estate of Siebrasse*, 2002 SD 26, 640 N.W.2d 747 (Siebrasse I). We remanded the case "for a hearing on the valuation of the land Delbert inherited and for additional appropriate proceedings if the value is changed." *Id.* ¶ 13. On rehearing of that appeal, we next held that because the will did not include a tax

clause, the federal estate taxes were to be apportioned among all of the devisees of the Estate under SDCL 29A-3-916(b). *In re Estate of Siebrasse*, 2002 SD 118, 652 N.W.2d 384 (*Siebrasse* II).

[¶ 4.] Following *Siebrasse II*, Delbert petitioned the circuit court for a hearing to determine the value of the real property he inherited. Delbert sought to reduce the value of the land and resulting estate and inheritance taxes. A hearing on this question became necessary because Donald, acting as personal representative, declined to support Delbert's revaluation/refund claim. Later, however, Donald relented to the point of giving Delbert a power of attorney that permitted Delbert to pursue the refund on his own. Consequently, the circuit court valuation hearing was continued indefinitely.

[¶ 5.] Delbert then filed his revaluation claim with the IRS. Delbert argued that the IRS had not previously been given sufficient information about the nature of the land to properly value it. He asserted that his inherited land had been over-valued by $183,600. He claimed that his lower valuation would reduce the value of the total estate and the corresponding federal estate tax liability.

[¶ 6.] The IRS subsequently accepted Delbert's claim, reduced the tax on the entire estate, and refunded $90,580.18 to the Estate ($75,525 in estate tax and $18,055.18 in interest). This dispute then developed over the right to the refund. The Estate argued that the refund was still being examined by the IRS, and therefore, it should not have been distributed until the federal estate tax was finally determined. Estate also argued that if the refund was to be distributed, it should be allocated among all those interested in the

---

1. A number of heirs and devisees in addition to Delbert and Donald paid the original federal estate tax. The original estate tax obligation was apportioned.

estate in accordance with their ultimate federal estate tax liability under the apportionment statute. Delbert, however, claimed that because the entire refund arose from his efforts, "equity demanded" that the entire refund belonged to him. Delbert sought an immediate distribution along with his attorney's fees and prejudgment interest.

[¶ 7.] The circuit court concluded that because the refund arose from Delbert's sole efforts to revalue his inherited land, equity required that the Estate should pay the entire refund to Delbert. The circuit court specifically declined to apportion the refund as a part of the new estate tax liability. The circuit court also ruled that Delbert was not entitled to his attorney's fees because he expressly waived them if he received the entire refund. The circuit court finally adopted a finding that the value of Delbert's inheritance was $145,000. Each of these rulings is now challenged.

[¶ 8.] Estate appeals raising the following issues:

1. **Whether the circuit court denied the Estate due process when it valued Delbert's inherited land after the hearing on the motion to distribute the estate tax refund.**

2. **Whether the circuit court erred in ordering the distribution of the federal estate tax refund before the taxes were finally determined.**

3. **Whether the estate tax liability remaining after the refund arising from the revaluation of Delbert's land should have been apportioned among all those liable for the tax.**

By Notice of Review, Delbert raises the following issues:

4. **Whether Delbert is entitled to attorney's fees in pursuing the federal estate tax refund.**

5. **Whether Delbert is entitled to prejudgment interest on the federal estate tax refund withheld from distribution by the Estate's personal representative.**

**Analysis and Decision**

[¶ 9.] 1. **Whether the circuit court denied the Estate due process when it valued Delbert's inherited land after the hearing on the motion to distribute the estate tax refund.**

[¶ 10.] We previously held that it was a violation of due process to value Delbert's inheritance without notice and opportunity to be heard. *Siebrasse I*, 2002 SD 26, ¶ 12, 640 N.W.2d at 750. We review due process questions de novo. *Roth v. Farner–Bocken Co.*, 2003 SD 80, ¶ 44, 667 N.W.2d 651, 665.

[¶ 11.] The Estate points out that prior to *Siebrasse I*, the circuit court adopted Estate's value of the inherited land without a hearing and this Court reversed. Estate argues that this time the circuit court "committed the same error in a different direction," by adopting Delbert's value without a hearing. Procedurally, we note that Delbert had noticed a hearing on valuation, and then abandoned it when the Estate granted him the power of attorney to seek the refund. Therefore, the circuit court did not conduct a specific valuation hearing. The valuation finding at issue was made as a part of the hearing on the refund dispute.[2]

[¶ 12.] Considering this procedural history, we believe that the Estate was technically on notice that the land valuation was a likely issue at the refund distribu-

2. The valuation finding was not made in the circuit court's bench decision. It was includ- ed in its findings of fact and conclusions of law following the hearing.

tion hearing. It was on notice because a distribution on the Estate's requested method using the apportionment statute would have required that the ultimate tax liability be apportioned pro rata according to the interest received. However, we also observe that under the apportionment statute, the value used to determine the tax is the value used to apportion the tax. SDCL 29A–3–916(b).[3] Therefore, because there is no dispute that $145,000 was the value used to determine the tax, no separate valuation was required. Moreover, the trial court did not apportion the ultimate tax liability and refund under 29A–3–916(b). Instead, it gave the entire refund to Delbert. Under these circumstances, a valuation finding was unnecessary to the circuit court's method of distributing the refund. Because a valuation finding was unnecessary, we reverse that finding and remand for a valuation hearing should it be necessary for any purpose in future proceedings.

[¶ 13.] **2. Whether the circuit court erred in ordering the distribution of the federal estate tax refund before the taxes were finally determined.**

[¶ 14.] The circuit court concluded that the refund should be distributed immediately. Donald, however, argues that an immediate distribution exposed him to personal liability because, as personal representative of the estate, he was liable for any tax that was erroneously refunded. "We review a trial court's conclusions of law under the de novo standard[.]" *Burkhart v. Lillehaug*, 2003 SD 62, ¶ 9, 664

N.W.2d 41, 42 (citing *Osloond v. Osloond*, 2000 SD 46, ¶ 6, 609 N.W.2d 118, 121).

[¶ 15.] We first note that if refunds are later determined to be erroneous, the IRS may recover them. 26 USC 7405 provides:

(a) Refunds after limitation period.— Any portion of a tax imposed by this title, refund of which is erroneously made, within the meaning of section 6514, may be recovered by civil action brought in the name of the United States.

(b) Refunds otherwise erroneous.—Any portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States.

We also note that this record reflects Donald was contacted by the IRS and advised that the government intended to reexamine the refund. In fact, Donald showed Delbert a letter from the IRS stating that the IRS would be comparing differing appraisals in its reexamination of the refund. Therefore, Donald, as personal representative, had actual knowledge that the tax liability remained unsettled. Moreover, as we noted in *Siebrasse I* and *II*, "SDCL 55–13–5 charges the principal of an estate with all settlement expenses, including federal estate taxes. Further, an estate cannot be closed until the federal estate taxes are paid. *See* SDCL 29A–3–1003(a)(2)." *Siebrasse II*, 2002 SD 118, ¶ 21, 652 N.W.2d at 388.

---

3. SDCL 29A–3–916(b) provides:

Except as provided in subsection (i) and, unless the will otherwise provides, the tax shall be apportioned among all persons interested in the estate. The apportionment is to be made *in the proportion that the value of the interest of each person* interested in the estate *bears to the total value of the* *interests of all persons* interested in the estate. *The values used in determining the tax are to be used for that purpose.* If the decedent's will directs a method of apportionment of tax different from the method described in this code, the method described in the will controls.
(Emphasis added.)

[¶ 16.] Under these circumstances, we conclude that Donald had the discretion to withhold distribution of the refund until the IRS completed its reexamination. He was given that discretion by SDCL 29A–3–916(d)(1), which provides in part:

> The personal representative or other person in possession of the property of the decedent required to pay the tax *may withhold from any property distributable* to any person interested in the estate, upon its distribution to the person, *the amount of tax* attributable to the person's interest.

(Emphasis added.) Considering the fact that distribution of the refund was being reexamined and a change could expose the personal representative to personal liability, Donald had discretion under this statute to withhold distribution of the refund until the federal estate tax obligation was finally determined.[4] We therefore reverse the order requiring an immediate distribution of the refund.

[¶ 17.] **3. Whether the estate tax liability remaining after the refund arising from the revaluation of Delbert's land should have been apportioned among all those liable for the tax.**

■ [¶ 18.] Questions involving the application of tax law are questions of law. *Butler Machinery Co. v. SD Dept. of Revenue*, 2002 SD 134, ¶ 6, 653 N.W.2d 757, 759. "Questions of law are reviewed de novo." *Rindal v. Sohler*, 2003 SD 24, ¶ 6, 658 N.W.2d 769, 771 (citation omitted).

■ [¶ 19.] "Federal estate taxes are a tax on the right to transfer property from the estate of the decedent to the beneficiaries. The federal estate taxes are imposed on the gross estate minus expenses of administration, credit for state inheritance taxes and the unified credit." *Siebrasse II*, 2002 SD 118, ¶ 22, 652 N.W.2d at 388 (emphasis added). With respect to liability for those taxes, "South Dakota adopted the Uniform Probate Code, including SDCL 29A–3–916(b), which continues to provide for equitable apportionment of federal estate taxes so that each specific share, interest or legacy bears its proportionate part of the federal estate taxes." *Id.* ¶ 11. The circuit court however, declined to apply this statute noting that Delbert's efforts led to the refund, and therefore, it was "equitable" to distribute the entire refund to him. The circuit court stated "[e]quity demands that the personal representative not be allowed to benefit and that the full refund be paid to Delbert."

[¶ 20.] On appeal, Estate argues that the circuit court erred in failing to apportion the ultimate federal estate tax, which included the refund, among all those liable for the tax. On the other hand, Delbert continues his argument that "[p]rinciples of equity require that Delbert receive the full refund." However, Delbert cites no authority for this proposition. Furthermore, he fails to acknowledge the specific statute requiring that, absent a tax clause, federal estate tax liability must be apportioned pro rata.

■ [¶ 21.] Absent a tax clause in the will, SDCL 29A–3–916(b) clearly requires that the federal estate tax be apportioned "in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate." It is noteworthy that this statute

---

4. Delbert also argues that the refund should have been invested for the benefit of the estate. However, we need not decide this issue because the question of prudent investing by the personal representative is not before us. Our question is whether the refund was required to be distributed.

does not distinguish between initial liability and liability after refunds. It requires that the ultimate tax liability (whether payments or refunds) be apportioned. Consequently, we previously held in this very case that because the will did not include a tax clause, the federal estate taxes were to be apportioned among all of the devisees of the Estate. *Siebrasse II*, 2002 SD 118, ¶ 31, 652 N.W.2d at 390. We finally note that the reduction in value of Delbert's land changed the value of the total estate. That reduction also changed the total amount of estate tax due and the pro rata percentage shares taken by each person interested in the estate. It may have also changed the applicable tax rate. Therefore, a reduction in Delbert's inheritance will change the tax liability of all persons interested in the Estate. Consequently, under SDCL 27A-3-916(b), the Estate must retain the refund and then re-apportion the ultimate tax liability of each person according to the interest they take.

[¶ 22.] Notwithstanding this specific statute and our previous holding, Delbert argues that "equity" demands that he receive the entire refund because his efforts led to the refund. However, Delbert conceded at trial that this was "strictly an equitable argument," and on appeal, he fails to cite to any authority authorizing this result. We also note that, "[a]n essential element to equitable relief is the lack of an adequate remedy at law." *Rindal*, 2003 SD 24, ¶ 12, 658 N.W.2d at 772 (citations omitted). Here we have a specific legal direction from statute, and "[u]se of equitable principles to trump an apposite statute ... is legally indefensible." *Lankford v. Wright*, 347 N.C. 115, 489 S.E.2d 604, 608 (N.C.1997). We therefore conclude that Delbert cannot rely on "equity" when a controlling statute clearly requires apportionment.

[¶ 23.] We finally note that a comparison of a complementary statute confirms the applicability of the SDCL 29A-3-916(b) apportionment requirement. A comparison of §§ 916(b) and (c) reveals that taxes must be apportioned pro rata and that true "equitable" apportionment is only available for "interest and penalties." Unlike SDCL 29A-3-916(b), only SDCL 29A-3-916(c)(2) allows true equitable apportionment, and it only permits such treatment for interest and penalties. It provides: "If the court finds that it is *inequitable* to apportion *interest and penalties* in the manner *provided in subdivision (b), because of special circumstances,* it may direct apportionment thereof in the manner *it finds equitable* [.]" (Emphasis added.) When read together, these statutes clearly reflect that under § 916(b), the *tax* must be apportioned pro rata, but under § 916(c), *interest and penalties* may be apportioned "equitably" to accommodate for special circumstances.

[¶ 24.] We hold that *Siebrasse II* and the express language of SDCL 29A-3-916(b) require that the ultimate tax liability must be a re-apportioned among all those interested in the estate after the revaluation and refund. SDCL 29A-3-916(b). Only interest could have been "equitably" distributed to Delbert for his individual efforts. SDCL 29A-3-916(c)(2). We therefore affirm the circuit court's equitable apportionment of all interest to Delbert, and remand the ultimate tax liability determination after the refund for re-apportionment in accordance with SDCL 29A-3-916(b).

[¶ 25.] **4. Whether Delbert is entitled to attorney's fees in pursuing the federal estate tax refund.**

[¶ 26.] Delbert argues that because his sole efforts created the refund, the estate should be required to pay his attorney's fees. He asserts that even if he were to

receive the entire refund, he would be receiving that refund as a "beneficiary of the estate," and therefore, it would be a benefit to the estate. Delbert relies on *In re Hafferman*, 442 N.W.2d 238 (S.D.1989). In that case, we applied a two-prong test for entitlement to attorney's fees by persons other than the personal representative: (1) the services rendered must be beneficial to the estate; and (2) the services must be necessary because of the negligence, fraud or failure to defend an interest of the estate by the personal representative of the estate.

 [¶ 27.] Here, however, the trial court specifically withdrew its initial finding that Donald's negligence necessitated Delbert's legal fees. That leaves the record with no finding to support an award of fees under prong (2) of *Hafferman*.[5] We also fail to see how distribution of the entire refund to Delbert, to the exclusion of all others interested in the Estate, benefits the Estate. Such a distribution is certainly of no benefit to all others interested in the Estate because they would have to pay more than their pro rata share of tax under Delbert's proposed distribution. Because we see no benefit to the Estate if the entire refund had been awarded to Delbert, we see no error in the circuit court's denial of Delbert's request for attorney fees.

 [¶ 28.] We also note that Delbert's argument is not properly before this Court. SDCL 15–26A–22 provides that "[a]n appellee may obtain review of a judgment or order entered in the same action which may adversely affect him. . . . The notice of review shall specify the judgment or order to be reviewed." Delbert has failed to specify the judgment or order from which he appeals. This is apparently because Delbert told the circuit court that if the court awarded him the entire refund, he would not be entitled to an award of attorney's fees. The circuit court agreed and awarded him the entire refund without fees. Therefore, his current argument that he is entitled to the entire refund plus attorney's fees is not properly before this Court. "We will ordinarily decline to review issues not properly presented to the trial court." *Estate of Gaspar v. Vogt, Brown & Merry*, 2003 SD 126, ¶ 15, 670 N.W.2d 918, 924 (citing *Knudson v. Hess*, 1996 SD 137, ¶ 8, 556 N.W.2d 73, 75).

[¶ 29.] However, because we are remanding to apportion the ultimate tax liability proportionally among those paying the tax, the Estate may benefit, and the trial court should reconsider this issue on remand.[6] On reconsideration, the attorney fee request is governed by SDCL 29A–3–720, which provides in part:

> The court may also award necessary expenses and disbursements, including reasonable attorney's fees, to any person who prosecuted or defended an action that resulted in a substantial benefit to the estate.

Although these findings (denominated as conclusions of law) may support the award under the second prong of *Hafferman*, Delbert did not present that argument to the trial court. We therefore express no opinion on this issue.

---

5. The circuit court also found the following:

> 2. During the course of the probate the personal representative refused to allow Delbert a valuation hearing or to participate in negotiations with the Internal Revenue Service on an audit of the Federal Estate Tax Return.
> 32. The personal representative opposed Delbert at each step. The personal representative wanted no part of a claim for refund.

6. At the hearing before the trial court, the Estate agreed that Delbert was entitled to attorney fees if the estate tax refund was apportioned. Because we remand for re-apportionment of the tax, Delbert is now entitled to pursue his fee request.

**[¶ 30.] 5. Whether Delbert is entitled to prejudgment interest on the federal estate tax refund withheld from distribution by the Estate's personal representative.**

[¶ 31.] Delbert argues that he is entitled to prejudgment interest on the federal estate tax refund. He contends that he is entitled to interest from the time the personal representative received the check to the time the refund is distributed. Both parties rely on SDCL 21–1–11, which provides:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover *which is vested in him upon a particular day,* is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

(Emphasis added). However, this provision only applies to suits commenced before July 1, 1990. SDCL 21–1–13.2.

[¶ 32.] The statute relied on by the parties was superseded by SDCL 21–1–13.1, which provides in relevant part: "Any person who is entitled to recover damages ... is entitled to recover interest thereon from the day that the *loss or damage occurred* [.]" (Emphasis added.) In determining whether any loss or damage occurred, we first note that SDCL 29A–3–703(a) provides: "A personal representative is under a duty to settle and distribute the estate ... as *expeditiously and efficiently* as is consistent with the *best interests* of the estate." (Emphasis added.) It must also be remembered that as we noted in Issue 2, SDCL 29A–3–916(d)(1) gives the personal representative discretion to withhold property until the tax is finally determined. Both statutes give the personal representative considerable discretion in such matters.

[¶ 33.] Considering this discretion, Delbert failed to establish that any "loss or damage" occurred. Although Delbert argues that he was entitled to the refund on the day Donald received it, SDCL 29A–3–703(a) only required that Donald distribute the refund "expeditiously and efficiently." Moreover, the personal representative was entitled to delay some of the property distribution pending the final federal estate tax determination. Under these circumstances, Delbert failed to establish that Donald failed to act "expeditiously and efficiently" and that Delbert suffered any "loss or damage." We affirm this issue.

[¶ 34.] Affirmed in part, reversed in part and remanded.

[¶ 35.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.