1999 SD 128

**Rose COTTON, Plaintiff and Appellant,**

v.

**Nancy MANNING/Law Office of Nancy Manning, Defendants and Appellees.**

**Nos. 20606, 20644.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 24, 1999.

Reassigned June 6, 1999.

Issue 2 Reassigned Aug. 16, 1999.

Decided Sept. 29, 1999.

Rehearing Denied Oct. 28, 1999.

Patricia A. Meyers of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

Craig A. Pfeifle of Lynn, Jackson, Shultz & Lebrun, Rapid City, South Dakota, Attorneys for defendants and appellees.

[¶ 1.] **MILLER, Chief Justice, delivers the majority opinion of the Court on Issues 1 and 3, which hold the trial court properly granted summary judgment dismissing an associate attorney's claims against her employer for post-termination compensation, and the trial court did not err in dismissing the employer's barratry claim.**

[¶ 2.] **SABERS, Justice, delivers the majority opinion on Issue 2, which holds genuine issues of material fact existed whether the employer breached the employment contract.**

[¶ 3.] MILLER, Chief Justice (on reassignment), who would affirm the trial court on all issues, writes the majority opinion on Issue 1, which holds the trial court properly granted summary judgment dismissing an associate attorney's claims against her employer for post-termination compensation.

### FACTS

[¶ 4.] In December 1994 Nancy Manning hired Rose Cotton to work as an associate in Manning's law office in Rapid City, South Dakota. On January 3, 1995, both parties signed a one-year employment contract, which was to be renewed automatically unless thirty days' notice was given to the other party. The contract's terms provided for compensation based upon a $30,000 annual salary. Cotton was to receive $1,250 monthly for the first three

months of the contract period and $1,875 monthly thereafter. This monthly compensation was to increase to $2,500 in 1996. The contract also provided Cotton the opportunity to negotiate to receive a higher percentage of the base salary prior to January 1, 1996, if she generated $4,500 of income for three consecutive months. In addition, the contract stated that Cotton was to receive five percent of "all gross income she generate[d] each month."

[¶ 5.] In December 1995 the parties executed a new contract, which changed certain terms of the 1995 agreement. This contract, which was signed by both parties and effective January 1, 1996, provided that Cotton's monthly compensation would be based upon monies received from her clients each month (reduced by sales tax and costs), with the minimum monthly compensation set at $1,875 and the maximum amount set at $3,000. The contract also provided Cotton the opportunity to negotiate the maximum amount if the law office received more than $6,000 in a month from her clients; however, such negotiation would be contingent upon Manning receiving a salary during that month and the law office being current on its accounts payable. In addition, Cotton was to receive $100 each month to compensate for the lack of a pension and health plan available to her. The contract also required Manning to provide certain working amenities including: a private office, materials and supplies, secretarial assistance, paralegal research assistance, telephone service, and "such other facilities and services as are considered customary and consistent with her position and adequate for the proper performance of her duties."

[¶ 6.] On April 2, 1996, Cotton gave Manning written notice that she intended to terminate her employment with the law office, effective April 31, (sic) 1996. The notice failed to provide any reason for the termination. In a written response, Manning informed Cotton that her termination letter failed to meet the terms of the 1996 contract and, thus, violated the employment agreement. Moreover, Manning listed several items that she believed Cotton owed to the law firm as a result of her employment termination and also informed Cotton that it would be feasible for her to stop working on April 19 rather than the end of the month.

[¶ 7.] In August 1997 Cotton filed suit, claiming Manning breached the employment contract. She alleged that Manning failed to provide her with appropriate research tools and failed to pay compensation allegedly due her. Shortly thereafter, Manning filed a counterclaim, asserting Cotton's claims were frivolous and actionable under South Dakota's barratry statute.

[¶ 8.] In December 1997 Manning moved for partial summary judgment. The trial court granted the motion, finding that the unambiguous terms of the agreement failed to provide for post-employment compensation for Cotton. However, the trial court stated that the breach of contract claim still remained; thus, the summary judgment failed to completely conclude the action.

[¶ 9.] Thereafter, Cotton brought a motion to dismiss Manning's barratry claim. Before the court decided Cotton's motion, Manning moved for summary judgment on any remaining claims. The trial court dismissed Manning's barratry claim and granted summary judgment in Manning's favor.

[¶ 10.] Cotton appeals, raising the following issues:

1. Did the trial court err when it determined as a matter of law that Cotton was not entitled to post-termination compensation?

2. Did the trial court err when it determined as a matter of law that Cotton was not entitled to breach of contract damages?

[¶ 11.] By notice of review, Manning raises the following issue:

3. Did the trial court err in dismissing Manning's barratry claim?

## DECISION

[¶ 12.] **1. The trial court did not err when it determined that Cotton was not entitled to post-termination compensation.**

[¶ 13.] The trial court determined that under the unambiguous terms of the employment contract, Cotton was not entitled to post-employment compensation.[1] We agree.

[¶ 14.] The contract under which Cotton was working (entitled "Professional Compensation Agreement") stated in pertinent part:

5. *Compensation*

A. For all services rendered by the Lawyer during the term of this agreement she shall be paid one-half of all monies received from lawyer's clients each month, reduced by sales tax and costs paid by each client. This monthly amount shall be no less than $1875.00 per month nor no more than $3000.00 per month. In the event that The Law Office of Nancy Manning receives more than $6000.00 per month from Lawyer's clients, the parties hereto agree to negotiate a higher wage than $3000.00. Such negotiation shall be contingent upon the Law Office of Nancy Manning being current in accounts payable and Nancy Manning receiving a salary for that same month.

[¶ 15.] As this Court has previously stated, " '[t]he effects and terms of a contract are questions of law to be resolved by the court[.]' " *Campion v. Parkview Apartments,* 1999 SD 10, ¶ 25, 588

N.W.2d 897, 902 (quoting *Production Credit Ass'n of the Midlands v. Wynne,* 474 N.W.2d 735, 740 (S.D.1991) (citation omitted)); *see also Singpiel v. Morris,* 1998 SD 86, ¶ 8, 582 N.W.2d 715, 717 (citation omitted) (stating contract interpretation is a question of law and no presumption exists in favor of the trial court's determination). This Court " 'is to enforce and give effect to the unambiguous language and terms of the contract[.]' " *Campion,* 1999 SD 10, ¶ 25, 588 N.W.2d at 902 (citation omitted). When determining "if ambiguity is present," we employ the following standard:

A contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract. Rather, a contract is ambiguous only when "it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement . . . ."

*Ducheneaux v. Miller,* 488 N.W.2d 902, 909 (S.D.1992) (internal citations omitted).

[¶ 16.] In applying the standard to the contract before us, we conclude that the contract's language is unambiguous. It clearly entitled Cotton to receive monthly compensation based upon monies received from her clients.[2] However, it makes no provision for post-employment or future compensation, and this Court may not read such a provision into it. *See Commercial Trust & Sav. Bank v. Christensen,* 535 N.W.2d 853, 856 (S.D.1995) (stating that when interpreting contracts, this Court is prohibited from resorting to strained or unusual interpretations). Simply, the language cannot be construed to

---

1. Cotton claims that she is entitled to compensation under the doctrine of procuring cause. Because we find the contract to be unambiguous, we need not address the doctrine.

2. It is important to note that the contract under which the parties were operating was

not one of adhesion, but was negotiated. Even though Cotton claims that Manning drafted the terms without her input, her affidavit states that when presented with the contracts, she indicated to Manning that she would think about the terms and "get back to her."

provide Cotton the compensation that she is seeking, and this Court "will not read exceptions into the instrument ... when the language is clear on its face." *See Harksen v. Peska,* 1998 SD 70, ¶ 18, 581 N.W.2d 170, 174 (footnote omitted). Therefore, we find no error in the trial court's granting of summary judgment in Manning's favor.

[¶ 17.] Affirmed.

[¶ 18.] AMUNDSON and GILBERTSON, Justices, concur.

[¶ 19.] SABERS, Justice, and CALDWELL, Circuit Judge, dissent.

[¶ 20.] CALDWELL, Circuit Judge, sitting for KONENKAMP, Justice, disqualified.

SABERS, Justice, dissents on Issue 1.

[¶ 21.] The majority opinion is wrong on Issue 1 if it means to say that post-termination compensation includes the amount of money that Cotton earned during the time of her employment, but has not yet received. The contract compensation provision states, in part:

> For all services rendered by the Lawyer *during the term of this agreement* she shall be paid one-half of all monies received from lawyer's clients each month, reduced by sales tax and costs paid by each client.

(emphasis added). The phrase "during the term of this agreement" refers to when the services were rendered, not when the monies are received. Therefore, Cotton is clearly entitled to receive one-half of monies received by Manning from Cotton's clients for services rendered by Cotton during the term of the agreement. Obviously, any services provided by Cotton to her clients during her employment entitles her to one-half of the money, subject to sales tax and costs, once it is received; whether the money is received during employment or months after the employment is terminated is irrelevant.

[¶ 22.] Read correctly in this manner, the contract provision *is* unambiguous. Accordingly, what other "post-termination compensation" could Issue 1 be talking about? The entire discussion under Issue 1 is of no import because, in reality, there is no Issue 1. It is a non-issue. At any rate, the trial court's granting of summary judgment on these issues was improper.

[¶ 23.] Incredibly, the amount of money that Cotton earned during her employment or the amount that the firm received from her clients is not even in this record and has not even been calculated yet. So, how can the trial court judge jump in the jury box and decide this case by summary judgment? How could the Justices let him get by with it? You tell me! I haven't a clue!

[¶ 24.] Finally, I challenge the Issue 1 majority to attempt to reconcile their vote in this case with the unanimous opinion that was issued by this court on September 1, 1999. *See Paint Brush v. Neu,* 599 N.W.2d 384, 1999 SD 120. It was authored by Circuit Court Judge Warren Johnson, sitting for me as I was disqualified. It not only correctly overrules *Janklow v. Viking Press,* 459 N.W.2d 415 (S.D. 1990) but correctly restates that "[t]he trial court is not to decide the issues of fact, just determine if any such issues exist." *Id.* ¶ 31, 459 N.W.2d 415 (citing *Wilson v. Great Northern Railway Co.,* 83 S.D. 207, 157 N.W.2d 19, 21 (S.D.1968)). They do. Reverse and Remand.

[¶ 25.] SABERS, Justice (on reassignment) writing the majority opinion on Issue 2, which holds genuine issues of material fact existed whether the employer breached the employment contract.

[¶ 26.] **2. The trial court erred when it determined as a matter of law that Cotton was not entitled to breach of contract damages as genuine issues of material fact existed.**

[¶ 27.] Genuine issues of material fact exist whether Manning breached the employment contract by (1) failing to provide the appropriate work tools, and (2)

failing to compensate Cotton in accordance with the employment contract. *Wilson*, 157 N.W.2d at 21.

[¶ 28.] Cotton says Manning failed to provide her with the appropriate work tools thereby breaching the employment contract. Apparently, Manning denies the failure and the breach. Whether she did or not is the question. In other words, whether she provided appropriate work tools or not is the issue of fact for the factfinder. Is this a genuine issue of material fact?

[¶ 29.] Is it genuine ?—Yes!

[¶ 30.] Is it material ?—Yes!

[¶ 31.] Therefore, summary judgment is improper. This is basic first year law school black letter law. *Wilson*, 157 N.W.2d at 21.

[¶ 32.] Additionally, if Manning breached the contract by failing to provide the appropriate work tools as Cotton claims, the measure of damages is set out in the contract. So, under any circumstances, the contract damages provision must be calculated. This has not been done yet and therefore, summary judgment is improper.

[¶ 33.] Cotton says that Manning failed to compensate her in accordance with the employment contract. Apparently, Manning again denies the failure and the breach. Whether she did or not is the question. In other words, whether she failed to compensate Cotton per the contract or not is the issue of fact for the fact finder.

[¶ 34.] Is it genuine ?—Yes!

[¶ 35.] Is it material ?—Yes!

Therefore, summary judgment is wholly improper. *Wilson*, 157 N.W.2d at 21.

[¶ 36.] We reverse and remand for trial the issue whether Manning breached the contract by failing to provide the appropriate work tools and by failing to compensate Cotton in accordance with the employment contract.

[¶ 37.] AMUNDSON, Justice, and CALDWELL, Circuit Judge, concur.

[¶ 38.] Being of the opinion that no genuine issues of material fact exist, MILLER, Chief Justice, and GILBERTSON, Justice, dissent.

[¶ 39.] CALDWELL, Circuit Judge, sitting for KONENKAMP, Justice, disqualified.

[¶ 40.] MILLER, Chief Justice (on reassignment), who would affirm the trial court on all issues, writes the majority opinion on Issue 3, which holds the trial court did not err in dismissing Manning's counterclaim of barratry.

[¶ 41.] **3. The trial court did not err in dismissing Manning's counterclaim.**

[¶ 42.] Following the trial court's granting of partial summary judgment in Manning's favor, Cotton moved to dismiss Manning's barratry claim, which included a request for costs, expenses, disbursements and attorney fees. She asserted that the trial court's failure to dismiss the entire action established that her claim was not frivolous; therefore, the counterclaim was without merit. The trial court granted Cotton's motion.

[¶ 43.] Manning claims that the trial court erred in dismissing her counterclaim for barratry,[3] because the complaint was well pleaded. She also argues that the trial court's failure to enter findings of fact or conclusions of law prevents her from properly arguing the ruling on appeal.[4] We disagree.

---

3. South Dakota's barratry statute, SDCL 20–9-6.1, provides as follows:

Barratry is the assertion of a frivolous or malicious claim or defense by a party in a civil action under Title 15. Barratry constitutes a cause of action which may be asserted by filing a pleading in the same civil action in which the claim of barratry arises or in a subsequent action. A claim of barratry shall be determined in the same manner as any other substantive cause of action asserted in that civil action.

4. Manning relies on our decision in *Hartman v. Wood*, 436 N.W.2d 854 (S.D.1989), to sup-

 [¶ 44.] We review a trial court's grant or denial of a motion to dismiss in the same manner as we review a motion for summary judgment. *Yankton Ethanol, Inc. v. Vironment, Inc.,* 1999 SD 42, ¶ 6, 592 N.W.2d 596, 598 (citing *Steiner v. County of Marshall,* 1997 SD 109 ¶ 16, 568 N.W.2d 627, 631 (citations omitted)). We must determine whether the "pleader [is] entitled to judgment as a matter of law." *Id.* Thus, we give no deference to the trial court's legal conclusions. *Yankton Ethanol,* 1999 SD 42, ¶ 6, 592 N.W.2d at 598 (citing *Thompson v. Summers,* 1997 SD 103, ¶ 5, 567 N.W.2d 387, 390 (citation omitted)).

[¶ 45.] Manning's counterclaim alleged that Cotton had "no reasonable basis to proceed with this lawsuit" and that her actions "raise to the level of barretry (sic) under South Dakota law." However, we find that Manning could advance no facts that would support this claim and entitle her to relief. *See Hansen v. South Dakota*

*Dep't of Transp.,* 1998 SD 109, ¶ 6, 584 N.W.2d 881, 883 (citing *Schlosser v. Norwest Bank South Dakota,* 506 N.W.2d 416, 418 (S.D.1993) (citations omitted)). Therefore, we conclude that, because she is not entitled to judgment as a matter of law, her counterclaim was properly dismissed.

[¶ 46.] Affirmed.

[¶ 47.] SABERS, AMUNDSON, GILBERTSON, Justices, and CALDWELL, Circuit Judge, concur.

[¶ 48.] CALDWELL, Circuit Judge, sitting for KONENKAMP, Justice, disqualified.

---

port her claim. However, her reliance is misplaced. *Hartman* concerned a counterclaim brought under SDCL 15–17–35, a statute that is not at issue here. We cannot agree with her claim that *Hartman* "continues to be pertinent authority to the issues giving the dismissal of Manning's counterclaim."