2001 SD 132

**C & W ENTERPRISES, INC., a South Dakota Corporation, Plaintiff and Appellee,**

v.

**CITY OF SIOUX FALLS, Defendant and Appellant.**

No. 21735.

Supreme Court of South Dakota.

Considered on Briefs Oct. 1, 2001.

Decided Nov. 7, 2001.

Ronald A. Parsons, Jr., Chad Swenson of Johnson, Heidepriem, Miner, Marlow and Janklow, Sioux Falls, for plaintiff and appellee.

Lon J. Kouri, David A. Pfeifle of May, Johnson, Doyle & Becker, Sioux Falls, for defendant and appellant.

GILBERTSON, Chief Justice.

[¶ 1.] The City of Sioux Falls (City) and Sweetman Construction Company (Sweetman) entered into a general contract for the construction of an overpass and ramp at the intersection of I229 and Louise Avenue in Sioux Falls. Sweetman subcontracted the sewer and watermain work to C & W Enterprises, Inc. (C & W), with the approval of City. Problems with the project specifications resulted in necessary repairs, the cost of which was born by C & W. C & W sued City for breach of contract and damages. At trial, the jury found for C & W in the amount of $270,000. City moved for judgment n.o.v. and, in the alternative, a new trial. The trial court denied the motion for a new trial, but granted partial judgment n.o.v. on the verdict amount over $180,000. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On July 9, 1992, the State of South Dakota entered into a contract with Sweetman for work on a portion of the South Dakota Highway system located at the intersection of I229 and Louise Avenue in Sioux Falls. This intersection lies in an area of Lincoln County called the Prairie View watershed and is known for its drainage problems. Sweetman subcontracted the construction of the sanitary sewer system and relocation of the watermain, a portion of the project controlled by City, to C & W on November 24, 1992. Both the original contract and the subcontract were subject to the agreement and approval of City.

[¶ 3.] The terms of the subcontract required that C & W complete the sewer and watermain project in accordance with the terms of the general contract, which was jointly prepared by City and the State. The contract included both general conditions, which are standard specifications incorporated into every City contract, and the more detailed specifications for this particular project. The contract specifications for the sewer and watermain projects were designed, drafted and enforced by the Office of the City Engineer. Additionally, a City inspector was assigned to be on site as the work was performed.[1]

[¶ 4.] C & W's project essentially required 10 inch PVC sewer pipe to be laid inside a 14 inch steel casing. The piping was also to be supported by Type A bedding mate-

---

1. Roger Sorgdrager, the man serving in this capacity, had only recently been hired by City and had no prior inspection experience.

rial, "1/4 to ¾ inch crushed rock or pea gravel," which is used to provide support while maintaining the proper grade and water flow. Under particularly wet or unstable ground conditions, however, Type B bedding material is required. Type B bedding material consists of oversized "3/4 to 2 inch rock" and is considerably more expensive. For this reason, the contract provided *"[i]f Type B oversized material is necessary to stabilize the trench base, such will be specified by the Engineer . . . ."* (underlined in original).

[¶ 5.] The first 300 feet of the project progressed normally, with C & W using the Type A bedding material, but with ground conditions continuing to worsen. The City inspector was on site inspecting the work for compliance and providing daily reports to the City engineer. When the crew reached what was approximately the 300–foot mark, they hit an abandoned pipeline, which flooded the trench. The crew's superintendent officially requested that City authorize Type B bedding material for the remainder of the excavation. The City inspector informed C & W of City's refusal to authorize the Type B bedding material and the project continued, albeit with some difficulty, until the crew reached the last 355 feet of the excavation.

[¶ 6.] The conditions in the last 355 feet were so wet that C & W's project superintendent contacted Warren Barse, the company owner, explained the problem and informed him of City's refusal to authorize and pay for Type B bedding material. Barse instructed the superintendent to go ahead and use the Type B bedding material if the job could not be completed without it. Therefore, the last 355 feet of the

project contain the Type B bedding material. This material, however, was not approved until September 14, 1999. The entire project was completed by the end of September.

[¶ 7.] When problems with sagging and bending of the pipe were discovered in the first 300 feet, C & W repaired this damage at its own expense. A second inspection, however, revealed cracking and sagging in the bridge and ramp near the 400 to 500–foot mark, a point beyond the area where C & W had officially requested authorization for use of the Type B bedding material. The steel casing around the water pipe bent, causing the bridge above to crack. City demanded that C & W also correct this problem and rebury the pipe at its own expense. No problems were encountered in the final 355 feet in which Type B bedding material was used. C & W made the repairs and the project was completed.

[¶ 8.] When City refused to pay for the repairs, C & W sued City for breach of contract and sought to recover approximately $180,000 in damages related to repair of the 400 to 500–foot section of the project.[2] C & W also sought damages in the amount of the last installment owing on the contract, which City refused to pay. City filed a Third Party Complaint against Sweetman, but Sweetman was dismissed by stipulation on January 31, 1999. At trial, which was held from September 12 through 14, 2000, the jury found in favor of C & W for damages in the amount of $270,000 and prejudgment interest in the amount of $180,000.

[¶ 9.] On September 25, City filed a motion for judgment notwithstanding the verdict and, in the alternative, a motion for a new trial. At a hearing on October 11, 2000,

2. No damages were sought for the repairs on the first 300 feet of the project and no repairs were needed on the final 355 feet. Therefore, the only repairs at issue are those that were required in the middle 360 feet of the project where C & W requested authorization for Type B bedding material.

the trial judge denied the motion for a new trial, but did grant partial judgment n.o.v. to reduce the verdict to $180,000, determining the error was due to jury miscalculation and not to passion, prejudice or mistake of law. City appeals, raising the following issues:

1. Whether the trial court erred in holding C & W, as a subcontractor specifically approved by City, is in privity of contract with City such that it may sue City for a breach of contract.

2. Whether the trial court erred in denying City's motion for a directed verdict and in partially denying city's motion for judgment notwithstanding the verdict.

3. Whether the trial court erred in denying City's motion for a new trial.

## STANDARD OF REVIEW

[¶ 10.] City challenges the trial court's denial of its motion for a directed verdict. Our standard of review on motions for directed verdict is well settled:

A motion for a directed verdict under SDCL 15–6–50(a) questions the legal sufficiency of the evidence to sustain a verdict against the moving party. Upon such a motion, the trial court must determine whether there is any substantial evidence to sustain the action. The evidence must be accepted which is most favorable to the nonmoving party and the trial court must indulge all legitimate inferences therefrom in his favor. If sufficient evidence exists so that reasonable minds could differ, a directed verdict is not appropriate. The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse.

*Veeder v. Kennedy*, 1999 SD 23, ¶ 25, 589 N.W.2d 610, 617 (quoting *Border States Paving, Inc., v. S.D. Dep't of Transp.*, 1998

SD 21, ¶ 10, 574 N.W.2d 898, 901) (citations omitted).

[¶ 11.] City also challenges the trial court's partial denial of its motion for judgment notwithstanding the verdict. A motion for judgment n.o.v. "is based on and relates back to a directed verdict motion made at the close of all the evidence." *State v. Perovich*, 2001 SD 96, ¶ 11, 632 N.W.2d 12, 15 (citing SDCL 15–6–50(b)). The grounds for the directed verdict motion are merely brought before the trial court for a second review. *Perovich*, 2001 SD 96, ¶ 11, 632 N.W.2d at 15. "Thus, we apply the abuse of discretion standard when reviewing the trial court's ruling." *Id.* (citing *Treib v. Kern*, 513 N.W.2d 908, 914 (S.D.1994)). After reviewing the evidence in a light most favorable to the verdict, we determine whether there is sufficient evidence to support it. *Perovich*, 2001 SD 96, ¶ 11, 632 N.W.2d at 15.

[¶ 12.] City also moved for a new trial on the basis that the jury's verdict was excessive. "Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion." *Id.* (citing *Tunender v. Minnaert*, 1997 SD 62, ¶ 9, 563 N.W.2d 849, 851 (citation omitted)). Moreover, the determination of an award amount "is peculiarly a question for the jury." *Maryott v. First Nat'l Bank of Eden*, 2001 SD 43, ¶ 26, 624 N.W.2d 96, 105 (citing *Berry v. Risdall*, 1998 SD 18, ¶ 9, 576 N.W.2d 1, 4). Therefore, "[i]f the jury's verdict can be explained with reference to the evidence rather than by juror passion, prejudice or mistake of law, the verdict should be affirmed." *Id.*

## ANALYSIS AND DECISION

[¶ 13.] **1. Whether the trial court erred in holding C & W, as a subcontrac-**

tor specifically approved by City, is in privity of contract with City such that it may sue City for a breach of contract.

[¶ 14.] This Court has previously held that a subcontractor may proceed in a breach of contract action against the first party where the parties are in privity with one another. *See Fisher Sand & Gravel Co. v. State, Dept. of Transp.*, 1997 SD 8, ¶ 9–10, 558 N.W.2d 864, 867; *Sweetman Const. Co., Inc. v. State*, 293 N.W.2d 457, 461 (S.D.1980). Privity of contract occurs when: (1) the subcontractor is specifically approved by the first party; and (2) the two parties owe reciprocal duties to one another under the contract. *Id.* The trial court held that this precedent applies here. We agree.

[¶ 15.] City expressly approved C & W for the sewer and watermain work, a portion of the project designed, drafted and enforced by the Office of the City Engineer. C & W was obliged to complete the work in compliance with City's specifications and was subject to daily inspection by the City inspector. Likewise, City was required to specify the method and materials used for the project and to pay C & W for its work when the project was completed. Furthermore, the contract specifications themselves recite application to subcontractors as well as general contractors: "These general specifications are hereby made a part of all specifications hereafter issued as if thereto attached and shall apply to all Contractors and Sub–Contractors on all construction projects and shall be fully a part of all Contracts thereby entered into with the City." City's own drafting indicates its recognition of being in privity of contract with its subcontractors.

[¶ 16.] City, however, attempts to distinguish the *Fisher* and *Sweetman* holdings by relying upon the importance that SDCL 31–2–34 [3] played in their outcome. City claims that these holdings only apply to those instances where a subcontractor is suing the State, not to instances where a subcontractor is suing a municipality. This reliance is misplaced. The jurisdictional implications of SDCL 31–2–34 merely played a role in these holdings because the Eleventh Amendment to the United States Constitution, as well as Article III, Section 27 of the South Dakota Constitution, prohibit lawsuits against the State in the absence of an express abrogation of its sovereign immunity. The South Dakota Legislature has provided express abrogation of immunity for municipalities in this context. *See* SDCL 9–12–1(1) (providing "[e]very municipality shall have power [ ] to sue and be sued and to contract in its corporate name ...."). The rationale of the *Fisher* and *Sweetman* holdings, as applied to municipalities, remains the same. When City enters into a contract with a general contractor, who in turn subcontracts with another party under the express approval of City, it would defy logic to allow City or the subcontractor to be immune from liability to one another, particularly when the contracts give rise to reciprocal duties between them. *See City of Lennox v. Mitek Indus., Inc.*, 519 N.W.2d 330, 333 (S.D.1994) (allowing lawsuit between first party city and subcontractor on breach of contract claim, but affirming summary judgment on other grounds); *Wilson v. Hogan*, 473 N.W.2d 492, 494 (S.D.1991) (holding city waives immunity by entering into contract); *Blue Fox Bar, Inc. v. City of Yankton*, 424 N.W.2d 915, 917–18 (S.D.1988) (holding

---

3. SDCL 31–2–34 is a statutory exception to the sovereign immunity doctrine, which provides that the State may be sued on a construction contract.

governmental immunity is no defense to contractual liability).

[¶ 17.] City also attempts to argue that the competitive bidding requirements of SDCL chapter 5–18 negate the issue of privity. City cites to *Bak v. Jones County*, 87 S.D. 468, 210 N.W.2d 65 (S.D.1973), and *Hoiten v. City of Canistota*, 1998 SD 44, 579 N.W.2d 12, to support its position. These cases, however, do not apply to the facts at hand. *Bak* addresses the officious intermeddler who is not required to be compensated for work completed without bidding, without city approval and without any specifications whatsoever. 87 S.D. 468, 210 N.W.2d at 69–70,. *Hoiten* addresses the unenforceability of an informal oral agreement to change the terms of compensation for a city project, a change that essentially amounted to illegal padding. 1998 SD 44 at ¶ 4–6, 579 N.W.2d at 13–14. C & W, however, did not engage in any informal conversations to alter the terms or specifications of the contract. Nor did C & W perform new or additional work without City's approval. Thus, City's argument is without merit.

[¶ 18.] **2. Whether the trial court erred in denying City's motion for a directed verdict and in partially denying City's motion for judgment notwithstanding the verdict.**

[¶ 19.] City moved for a directed verdict on the basis that C & W breached its contract by failing to substantially perform. City also alleged that C & W failed to establish proximate cause. Given the conflicting testimony and evidence regarding these issues, the trial court determined that they were questions for a jury. *See Harms v. Northland Ford Dealers*, 1999 SD 143, ¶ 21, 602 N.W.2d 58, 63; *Cotton v. Man-*

*ning*, 1999 SD 128, ¶ 6, 600 N.W.2d 585, 589–90; *Gilkyson v. Wheelchair Express, Inc.*, 1998 SD 45, ¶ 7, 579 N.W.2d 1, 3. Likewise, when considering City's motion for judgment n.o.v., the trial court concluded, aside from the excessive amount, that there was sufficient evidence to sustain the verdict. We agree.

[¶ 20.] As explained above, a directed verdict or, in the alternative, a judgment n.o.v., is only justified when the evidence is such that reasonable minds cannot differ as to the outcome. *Veeder*, 1999 SD 23 at ¶ 25, 589 N.W.2d at 617. Here, conflicting evidence was introduced as to whether C & W used the proper bedding material according to the contract specifications.[4] This evidence was submitted to the jury with appropriate jury instructions explaining the burden of proof, the requirement of substantial performance, what constituted substantial performance, proximate cause and the measure of damages. City did not object to any of these instructions. Nor did City propose alternate instructions. In reviewing the jury's verdict, we do not reweigh the evidence, pass judgment on the credibility of the witnesses, or substitute our judgment for that of the fact finder. *See Berry*, 1998 SD 18 at ¶ 10, 576 N.W.2d at 4; *Bakker v. Irvine*, 519 N.W.2d 41, 49 (S.D.1994). Thus, we cannot say that City was, as a matter of law, entitled to either a directed verdict or judgment n.o.v., aside from the trial court's reduction in damages.

[¶ 21.] **3. Whether the trial court erred in denying City's motion for a new trial.**

---

4. City introduced evidence challenging C & W's use of "select fill," also ‚described as "chalky, dusty gravel." City asserted that the material used by C & W did not qualify as Type A bedding material, and therefore C & W did not substantially perform under the contract. The trial court, however, found otherwise.

[¶ 22.] A jury's verdict may be set aside by the trial court only in those rare circumstances where it is patently clear that the verdict was "the result of passion or prejudice or [that] the jury has palpably mistaken the rules of law . . . ." *LDL Cattle Co., Inc. v. Guetter*, 544 N.W.2d 523, 526–27 (S.D.1996) (quoting *Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D.1983)). City moved for a new trial pursuant to SDCL 15–6–59(a)(5), which provides: "A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes: . . . Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice." Thus, we must consider whether, in light of the $270,000 verdict, the trial court abused its discretion in denying City's motion for a new trial. *Maryott*, 2001 SD 43 at ¶ 26, 624 N.W.2d at 105.

[¶ 23.] While it is true that the $270,000 damage award was excessive,[5] the trial court remedied this error by granting partial judgment n.o.v. and reducing the verdict to an amount supported by the evidence. The trial court attributed the excess award to jury miscalculation, and not to any passion, prejudice or mistake of law. *See id.* (noting that "[t]he trial court is best able to judge whether the damages awarded by a jury are the product of passion or prejudice.") (quoting *Berry*, 1998 SD 18 at ¶ 10, 576 N.W.2d at 4). We do not see that this determination is an abuse of the trial court's discretion. Therefore, we affirm the trial court's denial of City's motion for a new trial.

[¶ 24.] SABERS, AMUNDSON, KONENKAMP, Justices, and GORS, Circuit Judge, Acting Supreme Court Justice, concur.

---

**5.** C & W admitted in the motion hearing that the evidence only established damages in the amount of $180,000 and not $270,000.