2005 SD 14

**A. Carl VON STERNBERG and Mark A. Von Sternberg, Plaintiffs and Appellants,**

**v.**

**Lawrence CAFFEE, Defendant and Appellee.**

**No. 23104.**

Supreme Court of South Dakota.

Argued Oct. 5, 2004.

Decided Jan. 26, 2005.

---

Casey N. Bridgman of Bridgman and Adel, Wessington Springs, South Dakota, Attorneys for plaintiffs and appellants.

Kent Shelton of Churchill, Manolis, Freeman, Kludt, Shelton & Burns, Huron, South Dakota, Attorneys for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] In this dispute over a farm management and cattle partnership contract, we conclude that the trial court should not have allowed defendant to offer evidence about an alleged oral modification to the contract because, in the circumstances of this case, the written contract could be modified only by a contract in writing. We affirm in part, reverse in part, and remand for a new trial on defendant's counterclaim.

## Background

[¶ 2.] A. Carl and Mark A. Von Sternberg (plaintiffs) own a farm in Buffalo County, South Dakota. On December 18, 1999, Lawrence Caffee (defendant) and plaintiffs entered into a five-year "Management Agreement." Among other duties, defendant was to manage cattle and farming operations and sell gravel, sand, and rock. Plaintiffs prepaid $166,750 of anticipated expenses to defendant for the year 2000. The parties amended their written contract on February 26, 2000, agreeing that the terms were to take effect retroactively to January 1, 2000. With the amendment, defendant would continue his management responsibilities, but plaintiffs

and defendant would be partners in the cattle operation.

[¶ 3.] The Management Agreement included a termination clause: on ninety days written notice to the other, either party could terminate the contract without cause or penalty. Although the agreement was to last for a period of five years, it required that the parties review the contract annually. If, after the annual review, either party was not satisfied with how the arrangement was transpiring, either side could terminate according to the contract's termination provision.

[¶ 4.] The first annual review meeting took place in November 2000. In attendance were the parties, along with their accountants, and Don Ensz, Carl Von Sternberg's friend and agent. At the meeting, defendant presented plaintiffs with an accounting, indicating that after deducting his expenditures from the $166,750 prepaid expenses, plaintiffs were entitled to $80,660.45. Defendant tendered a check for that amount. Carl Von Sternberg first accepted the check and then, wanting first to research the tax consequences, handed it back to defendant. Both accountants prepared documents indicating that the cattle partnership sustained a loss. As a result, defendant paid $8,914.55 to plaintiffs to settle the cattle operation accounting. For defendant's sale of gravel, plaintiffs paid him $10,000 as an incentive bonus.

[¶ 5.] Following the annual review meeting, Carl Von Sternberg learned that there were no adverse tax consequences in taking the $80,660.45. He asked defendant for the check, but defendant refused. On January 9, 2001, defendant notified plaintiffs by letter that the contract was terminated. Plaintiffs sued defendant for the $80,660.45 and for breach of contract in overgrazing plaintiffs' pastures. Defendant counterclaimed, alleging that (1) plaintiffs owed him $25,000 for the sale of gravel, (2) he had earned the $80,660.45, and (3) additional money was owed for other expenditures. Defendant would later support these claims with an accounting prepared long after the November 2000 annual review meeting.

[¶ 6.] The jury returned a $51,490.86 verdict for plaintiffs and a $25,000 verdict for defendant. Accordingly, the court entered a reduced judgment for plaintiffs for $26,490.86. On appeal, plaintiffs raise seven separate assignments of error. We address four issues: (1) whether the sale of gravel obtained from plaintiffs' land falls within the statute of frauds, thereby precluding oral testimony on a change in compensation terms; (2) whether the court erred in admitting the late accounting created nearly three years after the original accounting was submitted at the annual review meeting; (3) whether the court erred in allowing evidence of projected profits for the sale of cattle; and (4) whether the court erred in granting a directed verdict for defendant on plaintiffs' claim for breach of contract in overgrazing.[1]

---

1. We consider these issues under the following standards of review: Questions of law are reviewed *de novo. In re Estate of Siebrasse,* 2004 SD 46, ¶ 18, 678 N.W.2d 822, 827. Interpretation of a contract presents a legal question. *Cotton v. Manning,* 1999 SD 128, ¶ 15, 600 N.W.2d 585, 588 (citations omitted). We review a court's evidentiary rulings under the abuse of discretion standard. *State ex rel. Dep't Transp. v. Spiry,* 1996 SD 14, ¶ 11, 543 N.W.2d 260, 263 (citations omitted). An erroneous evidentiary ruling will be overturned if it was prejudicial. *Id.* Error is prejudicial when, " 'in all probability ... [it] produced some effect upon the final result and affected rights of the party assigning it.' " *Id.* (quoting *K & E Land and Cattle, Inc. v. Mayer,* 330 N.W.2d 529, 533 (S.D.1983)). We deem jury instructions proper when, as a whole, they correctly and accurately state the applicable

## Analysis and Decision

### A. Statute of Frauds

■ [¶ 7.] Defendant was to receive compensation at certain fixed rates for farming work and other responsibilities. No rate was fixed for the sale of gravel. Under the Management Agreement as amended on February 26, 2000, compensation for gravel sales was discretionary:

[Plaintiffs] may pay to [defendant], at [plaintiffs'] discretion, performance incentive bonuses. Such bonuses may be paid from time to time, at [plaintiffs'] discretion, and shall be based on [defendant's] overall performance regarding cropland, the sale of sand, gravel, rock, and similar materials, and the income from resale of real property purchased through the efforts of [defendant]. Nothing in this paragraph shall be construed to require [plaintiffs] to pay any such performance incentive bonuses, nor shall any practice of paying such performance incentive bonuses require [plaintiffs] to pay any future performance incentive bonuses, or to pay such bonuses at certain times.

[¶ 8.] Notwithstanding their written agreement, defendant asserted that plaintiffs' agent, Don Ensz, orally promised defendant that he would receive as compensation half of all gravel sales. Don Ensz testified that he never made any such promise. The trial court allowed defendant to offer this oral amendment to the Management Agreement as evidence in support of defendant's counterclaim.

[¶ 9.] Plaintiffs argue that any agreement for compensation on the sale of gravel was a sale of real property governed by the statute of frauds in SDCL 53-8-2(3).

They also contend that because the Management Agreement was in writing, any amendment would have to be in writing in accord with SDCL 53-8-7. We need only address the second contention. The Management Agreement was memorialized in writing. SDCL 53-8-7 provides that "[a] contract in writing may be altered by a contract in writing without a new consideration or by an executed oral agreement, and not otherwise."

[¶ 10.] Defendant's payment for the sale of plaintiffs' gravel was set forth in the compensation clause of the contract. Any compensation for the sale of gravel was at plaintiffs' discretion. Defendant asserts that Don Ensz, Plaintiffs' agent, materially altered the payment provision entitling defendant to a 50% interest in the gravel sales. Without citing controlling legal authority, defendant insists that it "was not as much a change in the agreement as it [was] a clarification of what the bonus would be." Such an alteration of a written contract is controlled by SDCL 53-8-7. Defendant does not contend that this was an executed oral agreement. Because all the material provisions of the contract between plaintiffs and defendant were in writing, the alleged modification must also have been in writing. Accordingly, the trial court erred in permitting defendant to testify about the purported oral contract modification.

### B. Admission of New Accounting

■ [¶ 11.] Plaintiffs next argue that the trial court erred in admitting into evidence defendant's new accounting provided nearly three years after the original accounting was supplied at the last annual review meeting.[2] This new accounting,

---

law. *Dunes Hospitality, L.L.C. v. Country Kitchen Int'l, Inc.*, 2001 SD 36, ¶ 7, 623 N.W.2d 484, 487–88 (citation omitted). Rulings on directed verdict motions are reviewed

under the abuse of discretion standard. *Treib v. Kern*, 513 N.W.2d 908, 914 (S.D.1994).

**2.** Whether there was actually a final accounting at the last and only review meeting is

plaintiffs contend, incorporated items wholly unrelated to the parties' cattle partnership. The language of the contract provision controlling the cattle agreement states:

> In regard to the *purchase, sale, and care of cattle,* and for purposes of this paragraph ... *only,* the relationship between the Owner [plaintiffs] and the Manager [defendant] shall be characterized as a partnership.... [Defendant] shall be referred to as the "Managing Partner" and [plaintiffs] shall be collectively referred to as the "Non-managing Partner."

(Emphasis added.) As such, plaintiffs believe that only accounting evidence of the cattle partnership should have been presented to the jury, not evidence of collateral damages.

[¶ 12.] "In all proceedings connected with the formation, conduct, dissolution, and liquidation of the partnership," partners are bound to act in the highest good faith toward their copartners. *Betts v. Letcher,* 1 S.D. 182, 46 N.W. 193, 198 (1890) (citation omitted). Each partner owes a fiduciary duty to the other partners. *Hayes v. N. Hills Gen. Hosp.,* 1999 SD 28, ¶ 55, 590 N.W.2d 243, 253 (citing *Betts,* 1 S.D. 182, 46 N.W. at 198). It is true that we have quoted authority to the effect that an "accounting and settlement between copartners is a condition precedent to an action by one against another on partnership claims and transactions...." *Ellenbecker v. Volin,* 75 S.D. 604, 609, 71 N.W.2d 208, 210 (1955) (citation omitted). In 2001, however, South Dakota revised its partnership laws. SDCL ch. 48–7A. An accounting is now not necessary for one partner to maintain a cause of action against another partner to enforce rights under the partnership or for separate rights. SDCL 48–7A–405(b).

[¶ 13.] At the conclusion of the trial, the judge instructed the jury that it should determine what amount, if any, plaintiffs were owed under the contract with defendant. The court admitted the accounting evidence defendant provided. Trial courts are vested with wide discretion when making evidentiary rulings. *U.S. Bank Nat. Ass'n v. Scott,* 2003 SD 149, ¶ 15, 673 N.W.2d 646, 651. We will not disturb these rulings absent an abuse of discretion. *In re Estate of Dokken,* 2000 SD 9, ¶ 39, 604 N.W.2d 487, 498. This Court has held, too, that when determining damages, a party may present any evidence deemed relevant. *See First Premier Bank v. Kolcraft Enter., Inc.,* 2004 SD 92, ¶ 23, 686 N.W.2d 430, 443; SDCL 19–12–1 (Rule 401); SDCL 19–12–2 (Rule 402).

[¶ 14.] We see no abuse of discretion in allowing defendant to present all relevant evidence to support his claims against plaintiffs for damages.

## C. Damages

[¶ 15.] Plaintiffs next argue that the trial court erred by allowing the question of damages stemming from the cattle operation to go to the jury. They objected to the admission of evidence of possible future profits from the cattle operation as being too speculative. Further, plaintiffs argue that the contract controlled the partnership with defendant and that defendant's assertion that he sustained a loss in profits from the premature sale of the cattle should have been precluded from the jury's determination of damages.

[¶ 16.] According to the amended "Management Agreement," defendant, as

---

subject to dispute. The trial court concluded that the material exchanged at that meeting was a "year-end summation," not a partnership final accounting.

the managing partner, was endowed with the power and duty to sell, care, and maintain the cattle. Both plaintiffs and defendant, under the contract, would share in any loss or profits relating to the cattle operation. Thus, defendant in his counterclaim maintained that he was entitled to lost profits because plaintiffs forced him to sell the cattle prematurely. It was for the jury to decide whether these allegations were true.

 [¶ 17.] Damages must be reasonably certain. *McKie v. Huntley*, 620 N.W.2d 599, 603 (S.D.2000); SDCL 21–2–1. *See Swenson v. Chevron Chem. Co.*, 89 S.D. 497, 505, 234 N.W.2d 38, 43 (1975). "Reasonable certainty requires proof of a rational basis for measuring loss, without allowing a jury to speculate." *McKie*, 620 N.W.2d at 603–04 (citing *Drier v. Perfection, Inc.*, 259 N.W.2d 496, 506 (S.D.1977) (quoting *Kressly v. Theberge*, 79 S.D. 386, 389, 112 N.W.2d 232, 233 (1961))). "Whether the fact of a loss has been proven to a reasonable certainty is ordinarily a question for the trier of fact." *Keegan v. First Bank of Sioux Falls*, 470 N.W.2d 621, 624 (S.D.1991). Furthermore, we review the trial court's "jury instructions as a whole to determine if they establish a full and correct statement of the law. . . ." *Rantapaa v. Black Hills Chair Lift Co.*, 2001 SD 111, ¶ 33, 633 N.W.2d 196, 206.

[¶ 18.] The trial court addressed the question of speculative damages in instruction numbers 30 and 33:

> [i]f you decide for the defendant on the question of liability you must then fix the amount of money which will reasonably and fairly compensate the defendant for any of the following elements of loss or harm suffered in person or property proved by the evidence to have been proximately caused by plaintiff's conduct, taking into consideration the nature, extent, and duration of the injury, whether such loss or harm could have been anticipated or not, namely:
>
> > You may award the defendant the profits defendant lost which were proximately caused by the plaintiff's actions.
>
> Whether any of these elements or damages has been proved by the evidence is for you to determine. Your verdict must be based on evidence and *not upon speculation, guesswork or conjecture.*
>
> . . . .
>
> The measure of damages for a breach of contract is the amount which will compensate the aggrieved party for all detriment proximately caused by the breach, or which, in the ordinary course of things, would be likely to result from the breach.
>
> No damages can be recovered for a breach of contract which is not clearly *ascertainable in both their nature and their origin.*

(Emphasis added.)

[¶ 19.] We conclude that the evidence was properly submitted to the jury with appropriate instructions on causation and damages related to the cattle operation. *See C & W Enter., Inc. v. City of Sioux Falls*, 2001 SD 132, ¶ 20, 635 N.W.2d 752, 758.

## D. Directed Verdict—Overgrazing Damages

 [¶ 20.] Lastly, plaintiffs argue that the trial court erred in granting defendant's motion for a directed verdict, thereby precluding their claim for damages from overgrazing the pastures. Plaintiffs argue that their expert witness provided sufficient testimony about defendant's breach of contract and the resulting damages for overgrazing the pastures. Under the contract, "[n]o area of pasture-

land shall be used for grazing at more than a fifty percent (50%) utilization rate. The Managing Partner [defendant] shall ... regularly inspect the pastureland for overgrazing ... and shall otherwise use good husbandry practices in regard to such cattle and pastureland...." Applying the contract terms, plaintiffs' expert testified that defendant had breached the contract by overgrazing the pastures at a utilization rate of 75 to 80%.

[¶ 21.] The trial court ruled that, despite the breach of contract, plaintiffs had failed to prove the extent of the damages sustained on the pastureland. The court found that there was no "evidence upon which the jury could base a finding concerning damages." There is a difference between having trouble ascertaining the amount of damages once proven and providing evidence that damages were, as a necessary element, actually incurred. "Difficulty in computing damages ought not to be confused with the requirement of proving damages as an essential element for recovery." *McKie*, 620 N.W.2d at 604 (citing *Seattle Western Indust., Inc. v. David A. Mowat Co.*, 110 Wash.2d 1, 750 P.2d 245, 249 (1988)).

[¶ 22.] Here, plaintiffs' expert witness testified to nothing from which damages could be calculated. In reviewing the record and taking into consideration all the evidence in favor of the nonmoving party, we are unable to find sufficient damage evidence to support plaintiffs' cause of action for overgrazing the pastures. *See Dunes Hospitality*, 2001 SD 36, ¶ 30–32, 623 N.W.2d at 492. Plaintiffs' mere assertion that they could not lease their pastureland for part of the next year was insufficient to prove damages to any degree of reasonable certainty. Because the extent of damages was not established at the trial, plaintiffs failed to satisfy all the essential elements for their claim.

### E. Conclusion

[¶ 23.] After deliberating, the jury handed down two verdicts, one for plaintiffs and the other for defendant. Being a general verdict, the award to defendant of $25,000 did not specify what damage or loss it was meant to compensate. Because the jury was improperly allowed to consider the alleged oral agreement on gravel sales, the entire counterclaim verdict must be set aside. Accordingly, although we conclude that some of the damages on the counterclaim were properly submitted, we reverse and remand defendant's counterclaim for a new trial. In all other respects, the case is affirmed.

[¶ 24.] Affirmed in part, reversed in part, and remanded for a new trial.

[¶ 25.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, concur.

[¶ 26.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 27.] This case presents a real can of worms. The written agreement was modified from time to time and mostly at the insistence of the owners. They insisted on modifications of the written agreement when it was to their advantage and now complain of a modification (not to their advantage).

[¶ 28.] I am satisfied that the trial court and the jury saw this case for what it was. The trial court properly instructed the jury on the issues and it appears the jury did an excellent job of resolving the differences.

[¶ 29.] The award to the Defendant of $25,000 on the counterclaim was the result of a general verdict, without objection or request for any special interrogatories. In the absence of objections to the verdict

forms or requests for special interrogatories, the verdicts of the jury should stand. See *Miller v. Hernandez,* 520 N.W.2d 266, 271 (S.D.1994) (holding that the general verdict form did not allow the Court to determine what, if any, damages awarded by the jury may be subject to prejudgment interest); see *also Stormo v. Strong,* 469 N.W.2d 816, 825 (S.D.1991) (commenting that the trial courts would be "well advised" to submit special interrogatories to the jury in order to eliminate any confusion over an award of damages and to aid in meaningful appellate review).

[¶ 30.] I would affirm the judgment and therefore I dissent.