#24000-a-JKK

**2007 SD 13**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| FB&I BUILDING PRODUCTS, INC., | Plaintiff and Appellee, |
| and | |
| MICHAEL JOHNSON, | Defendant, |
| v. | |
| SUPERIOR TRUSS & COMPONENTS, | |
| a Division of Banks Lumber, Inc., and | |
| BANKS LUMBER, INC., | Defendants and Appellants. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE ROBERT L. TIMM
Judge

\* \* \* \*

SCOTT N. HEIDEPRIEM
RONALD A. PARSONS, JR.
SHANNON R. FALON of
Johnson, Heidepriem, Miner,
 Marlow and Janklow                    Attorneys for plaintiff
Sioux Falls, South Dakota              and appellee.


RICHARD J. HELSPER
JODY ODEGAARD SMITH of
Glover & Helsper                       Attorneys for defendants
Brookings, South Dakota                and appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 27, 2006

OPINION FILED **01/24/07**

#24000

KONENKAMP, Justice

[¶1.]     In this contract dispute over commissions, the circuit court ruled that one of the parties materially breached the contract, but the non-breaching party was still ordered to pay commissions to the breaching party.  Because the contract specifically provided for such a remedy in the event the contract was cancelled for failure to meet any of its conditions, we affirm.

## Background

[¶2.]     Kermit Johnson formed FB&I Building Products, Inc. of Watertown, South Dakota.  FB&I was solely in the business of selling building materials. Kermit contacted Superior Truss & Components, of Minneota, Minnesota, about the possibility of doing business together.  On December 5, 1998, FB&I and Superior executed a sales agreement.  The terms of the agreement were negotiated by Kermit and Tom Nomeland, the general manager of Superior.  The resulting contract language was drafted by Nomeland and executed on Superior's letterhead.

[¶3.]     The sales agreement provided:

> This agreement is between FB&I Building products, hereafter known as FB&I and Superior Truss & Components, hereafter known as Superior.
>
> FB&I will act as an independent sales agent for Superior, which will be the supplier of various building products.
>
> Superior does hereby give FB&I the exclusive rights to sell Superior products in the state of Colorado.
>
> FB&I does hereby agree to exclusively sell Superior's, open-faced wall panels, floor panels, roof trusses and other miscellaneous products.  If Superior cannot provide services or products in a timely manner, FB&I has the right to use another supplier's products.

-1-

> FB&I will achieve annual sales of $800,000.00 of Superior products. Of which, $300,000 will be roof trusses.
>
> If any of the above conditions are not met by either party, the party that wished to cancel the agreement must give thirty days notice to the other party by certified mail. In the event of cancellation of this agreement, FB&I will be allowed to remain as an independent dealer without exclusive territory, and will be entitled to retain the customers that they continue to sell and service with Superior products.

Although the contract did not state what FB&I would receive as a commission on its sales, the parties now agree that the commission was set at 10%.

[¶4.] Shortly after Superior and FB&I executed this contract, Michael Johnson joined FB&I. Kermit and Michael had met previously when they were working for separate companies in the construction business. Kermit wanted Michael to join FB&I because of his "technical knowledge in reading and interpreting construction plans." On December 30, 1998, Michael became a forty-nine percent owner of FB&I, and he and Kermit agreed to split the commissions equally.

[¶5.] FB&I and Superior both acknowledge that in the first year FB&I exceeded the annual sales required under the contract. Yet, sometime in February 2000, FB&I began discussions with a different company, Component Manufacturing Company, about the possibility of FB&I selling Component products in Colorado. FB&I did not inform Component about its exclusive sales agreement with Superior. Component and FB&I ultimately executed a sales agreement near the end of March 2000, whereby FB&I agreed to exclusively sell Component's building products in Colorado. In accord with this agreement, in March 2000, FB&I sent a project to Component for bidding.

#24000

[¶6.] During this same time, Kermit and Michael's relationship began to deteriorate. In May 2000, Superior hired Michael. Through Michael, Superior learned that FB&I had entered into the exclusive sales agreement with Component in violation of FB&I's contract with Superior. On May 2, 2000, Superior sent notice to FB&I of its election to "terminate" the exclusive sales agreement with FB&I effective June 1, 2000.

[¶7.] After ending its agreement with FB&I, Superior continued to do business with certain customers brought to it by FB&I. In the sales agreement, a provision dealt with cancellation: "In the event of cancellation of this agreement, FB&I will be allowed to remain as an independent dealer without exclusive territory, and will be entitled to retain the customers that they continue to sell and service with Superior products." Nonetheless, in a letter dated July 18, 2000, Superior informed Kermit that, effectively, it had no intention of honoring this provision. Kermit would later explain that he "sold everybody on Superior" products and when Superior denied FB&I's right to sell Superior's products to FB&I's established customer base, while Superior at the same time sold directly to these customers, Superior was able to reap the benefits of FB&I's hard work without paying compensation. From 2000, when the agreement was cancelled, until 2004, Superior sold $2,327,528 in products to customers originally brought to Superior by FB&I, without paying FB&I commissions on these sales.

[¶8.]    FB&I brought suit against Superior alleging breach of contract, tortious interference with business relationships, conversion, and civil conspiracy.[1] FB&I argued that Superior breached the sales agreement when it cancelled it and refused to allow FB&I to retain its customers as expressly provided for under the agreement. In response, Superior insisted that it was justified in canceling the agreement with FB&I because FB&I breached the contract by entering into its sales agreement with Component. Superior further asserted that it was not obligated to pay FB&I commissions under the contract because FB&I's actions amounted to a material breach, thereby excusing Superior from all further performance.

[¶9.]    After a bench trial, the circuit court concluded that FB&I breached the contract when it entered into the exclusive sales agreement with Component and sent a Colorado project to Component for bidding. According to the court, FB&I's breach was material and justified Superior's canceling of the agreement. However, the court held that Superior also breached the contract when it refused to allow FB&I to retain its customers upon cancellation as the agreement expressly required. The court further found that Superior's conduct amounted to tortious interference with business relationships, but it did not find this to be separate or distinct from the breach of contract conduct. The court concluded that Superior did not commit conversion or civil conspiracy, and it refused FB&I's request for punitive damages.

---

1.    The circuit court granted summary judgment against FB&I in its suit against Michael Johnson. No one appeals that decision.

[¶10.] Because the court found that the breach of contract and tortious interference claims were not separate and distinct, FB&I was permitted one recovery. The court calculated that from 2000 through 2004, Superior's sales to FB&I's customers totaled $2,327,528. The court then computed FB&I's damages by reducing FB&I's 10% commission to 5.243%, representing a "fair rate" because FB&I did not incur any expenses when Superior did business with FB&I's customers. Ultimately, the court awarded FB&I $122,032.29 in commissions, plus interest in the amount of $51,532.

[¶11.] Superior appeals, claiming the circuit court erred by awarding any damages after it correctly found that FB&I materially breached the contract, or, in the alternative, the court erred when it awarded FB&I excessive damages.

## Standard of Review

[¶12.] We review a court's findings of fact under the clearly erroneous standard. Convenience Center, Inc. v. Cole, 2004 SD 42, ¶11, 678 NW2d 774, 777 (citing SDCL 15-6-52(a)). Conclusions of law are reviewed de novo. Hofeldt v. Mehling, 2003 SD 25, ¶9, 658 NW2d 783, 786 (citation omitted). Questions of contract interpretation are questions of law reviewed de novo. Ziegler Furniture and Funeral Home, Inc. v. Cicmanec, 2006 SD 6, ¶14, 709 NW2d 350, 354 (citing Schulte v. Progressive Northern Ins. Co., 2005 SD 75, ¶5, 699 NW2d 437, 438); *see also Convenience Center, Inc.*, 2004 SD 42, ¶11, 678 NW2d at 777.

## Analysis and Decision

[¶13.] Neither party disputes the court's finding that FB&I materially breached the sales agreement when it entered into a contract with Component to

sell Component's products in Colorado and submitted a Colorado project for Component to bid. Moreover, neither party asserts that the language used in the contract is ambiguous, or that the cancellation provision should be interpreted differently. Rather, Superior argues that because FB&I materially breached the sales agreement, that breach releases Superior from any future obligations under the cancellation provision.[2] Therefore, we must determine whether a material breach by FB&I relieved Superior of all further obligations under the sales agreement, notwithstanding the fact that the parties contracted for a duty to remain in the event the contract was cancelled.

[¶14.] According to Superior, whenever a party materially breaches a contract, the other party is excused from further performance under the contract. Further, it argues that because the contract does not limit Superior's remedies, "FB&I should not be allowed to rewrite the contract to make the cancellation provision the exclusive remedy." In response, FB&I contends that the cancellation provision is not a remedy, it is a right granted to FB&I in the event *either* party cancels the agreement. Moreover, according to FB&I, "[w]hile it generally may be true that upon breach, the non-breaching party's contractual obligations are

---

2. FB&I asserts that because Superior did not challenge the court's separate findings on the tortious interference claim, "Superior has waived any issue related to that cause of action on appeal." It also contends that "Superior's failure to appeal from an independent legal basis for the damages assessed against it by the trial court renders its appeal on the breach of contract claim moot." We conclude that Superior has preserved its appeal on the breach of contract claim because the tortious interference claim rises and falls on the success of the breach of contract claim.

extinguished, in this case, the parties contracted otherwise, and the language of the contract controls."

[¶15.]       It is well established that a material breach of a contract excuses the non-breaching party from further performance. S&S Trucking v. Whitewood Motors, Inc., 346 NW2d 297, 301 (SD 1984); Robinette v. Comm'r of the I.R.S., 439 F3d 455, 462 (8thCir 2006) (citing Restatement (Second) of Contracts § 237 (1981)); Miller v. Mills Constr., Inc., 352 F3d 1166, 1171-72 (8thCir 2003) (citation omitted) (applying South Dakota Law). However, "parties to a contract are allowed to write the terms of the contract themselves." State Farm Fire & Cas. Co. v. St. Paul Fire & Marine Ins. Co., 268 NW2d 147, 149 (SD 1978). "The presumption of law is that an instrument executed with the formality of a . . . contract deliberately entered into expresses on its face its true intent and purpose." Assam v. Hauk, 345 NW2d 384, 386 (SD 1984) (omission in original) (citation omitted). Therefore, "[c]ontracting parties are held to the terms of their agreement, and disputes cannot be resolved by adding words the parties left out." Gettysburg School Dist. 53-1 v. Larson, 2001 SD 91, ¶11, 631 NW2d 196, 200-01 (citation omitted).

[¶16.]       Under the terms of this contract, FB&I was obligated to exclusively sell Superior products in Colorado. It is undisputed that FB&I materially breached the exclusivity provision of the sales agreement when it entered into an exclusive sales contract with Component and brought a Colorado project to Component for bidding. The sales agreement provided that "[i]f any of the above conditions are not met by either party," one of the conditions being the exclusive sales promise, then the party wishing to cancel could do so on thirty day's notice. In light of

FB&I's conduct, Superior was entitled to cancel the contract. Nevertheless, the sentence directly following the cancellation provision states, "In the event of cancellation of this agreement, FB&I will be allowed to remain as an independent dealer without exclusive territory, and will be entitled to retain the customers that they continue to sell and service with Superior products." This provision required Superior to allow FB&I to retain its customers, no matter who was responsible for canceling the contract.

[¶17.] Material breach or not, the contract required that FB&I be allowed to retain its customers in the event the agreement was cancelled. The parties did not limit or restrict FB&I's right to retain its customers upon cancellation. The contract expressly required Superior to act, to perform a duty, in the event the contract was cancelled. This express duty did not arise until the contract was cancelled. The fact that the contract was cancelled put into effect the provision allowing FB&I to retain its customers, and Superior's duty to perform.

[¶18.] While the doctrine of material breach is well established in general contract law, when contracting parties specifically provide for a resolution in the event that contract conditions are not met, then we must defer to their agreement. Here, FB&I and Superior anticipated their parting and expressly provided that in the event any condition in their sales agreement was not met, FB&I would be allowed, upon cancellation by either party, to retain the customers it brought to Superior. "[W]here there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise[.]" Mid-America Marketing Corp. v. Dakota Industries, Inc., 281

NW2d 419, 425 (SD 1979) (citation omitted). We should not apply a default doctrine when the parties expressly contracted otherwise. *See* Cotton v. Manning, 1999 SD 128, ¶16, 600 NW2d 585, 588. Based on the language of the contract, the circuit court properly concluded that FB&I's material breach did not excuse Superior from its obligation to allow FB&I to retain its customers.

[¶19.] Superior argues in the alternative that FB&I did not suffer any damages as a result of its breach because FB&I had "basically substituted the contract it had with Superior Truss with a substantially similar contract with Component Manufacturing." Given FB&I's contract with Component, Superior contends that "FB&I is already in the same position it would have occupied had there been no breach." Moreover, according to Superior, under SDCL 21-1-5, FB&I is not permitted to "recover a greater amount in damages for the breach of contract than he could have gained by full performance on both sides." Therefore, because FB&I received commissions from Component, it was not also entitled to receive commissions from Superior, as that would result in FB&I receiving more than it would have received had both FB&I and Superior performed under the contract.

[¶20.] "To recover damages for breach of contract, the loss must be clearly ascertainable in both its nature and origin." McKie v. Huntley, 2000 SD 160, ¶18, 620 NW2d 599, 603 (citing SDCL 21-2-1); *see also* Von Sternberg v. Caffee, 2005 SD 14, ¶17, 692 NW2d 549, 555 ("[d]amages must be reasonably certain"). In proving damages, the party must establish "a reasonable relationship between the method used to calculate damages and the amount claimed." *McKie*, 2000 SD 160, ¶18, 620 NW2d at 603. Whether damages have been proven with reasonable certainty is a

question of fact. *Von Sternberg*, 2005 SD 14, ¶17, 692 NW2d at 555 (quoting Keegan v. First Bank of Sioux Falls, 470 NW2d 621, 624 (SD 1991)).

[¶21.]     Superior does not dispute the court's finding that from 2000 through 2004, Superior had sales with former FB&I customers in the amount of $2,327,528. Nor does Superior contend that the court erred when it reduced FB&I's 10% commission to 5.243% by cutting the 1999 compensation and expense percentages in half and adding in the net profit percentage.  Instead, Superior insists that because FB&I received commissions from Component, it is not entitled to also receive commissions from Superior.  This, however, is not what the parties contracted to have happen in the event the agreement was cancelled.  The parties expressly stated that in the event FB&I or Superior cancelled the contract, FB&I would be allowed to retain its customers.  Nothing in the contract stated that this right would be extinguished or limited if FB&I breached its agreement by entering into another sales agreement with a different company.

[¶22.]     Under the terms of the contract, FB&I's right to retain its customers was independent of any additional business FB&I might do with other companies. When Superior breached this provision of the contract by failing to pay the agreed commissions, FB&I suffered damage.   Superior does not challenge the method used by the court in calculating FB&I's damages.

[¶23.]     Affirmed.

[¶24.]     GILBERTSON, Chief Justice and SABERS, ZINTER, and MEIERHENRY, Justices, concur.